JOSEPH ASCHER *vs.* HERMAN B. COHEN, trustee, & others.

Middlesex. November 8, 1955. — January 3, 1956.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & WHITTEMORE, JJ.

*Trust,* Validity. *Husband and Wife,* Transfer of personalty. *Corporation,* Transfer of stock.

A transfer of corporate stock by a married woman to the trustees of an inter vivos trust created by her would not be invalidated by the fact that the transfer was made without the knowledge or consent of her husband and for the purpose of preventing him from acquiring the stock or participating in the corporate business or enjoying any benefits therefrom. [400]

An effective transfer of corporate stock from the settlor of an inter vivos trust to herself and another as trustees of the trust was made by delivery to her cotrustee of the stock certificate with a duly stamped assignment by her to the trustees attached. [400]

The fact that the settlor of an inter vivos trust was one of two trustees and the beneficiary of all the income during her life and reserved to herself the powers to revoke or amend the trust and to require principal to be paid to her or applied for her benefit did not make the provisions of the trust governing the disposition of the trust property after her death invalid as an attempted testamentary disposition. [400]

PETITION, filed in the Probate Court for the county of Middlesex on April 22, 1953.

The case was heard by *Monahan, J.*

*Harry J. Williams,* for the petitioner.

*John S. McKenney,* for the respondents Cohen and others.

*Monto Rosenthal,* administrator, pro se.

RONAN, J. This is a petition in equity brought under G. L. (Ter. Ed.) c. 230, § 5, as amended by St. 1934, c. 116, by one Ascher to recover as assets of the estate of his deceased wife, Marion Goldenberg Ascher, two hundred shares of the capital stock of the Alberti Importing and Exporting Co., Inc., now held by the respondent Cohen as trustee in accordance with the provisions of a written trust created by the said Marion. The administrator with the will annexed

had refused to bring proceedings in his name to recover the said shares. The petitioner has appealed from a final decree dismissing the petition, and the appeal is here with a report of the evidence and also a report of the material facts.

One Goldenberg, Marion's first husband, had established and conducted a wholesale grocery business for some time prior to and up to the time of his death in 1931. Marion thereafter with the help of one of her sons continued the business until 1935 when it was succeeded by the respondent corporation, Alberti Importing and Exporting Co., Inc., which she caused to be incorporated. She received two hundred shares of its stock and each of her four children one hundred shares. With the assistance of one of her sons and another in 1947 she continued to conduct the business. She married the petitioner in 1947. She became ill in 1951 and was confined in a hospital from May 19, 1951, to August 7, 1951, when she was discharged, although she then knew that it would be necessary for her to return which she did on October 24, 1951. She remained in the hospital until her death on January 19, 1952.

She consulted an attorney during the interval between her visits to the hospital in regard to the disposition of her property. She desired to put her property beyond the reach of her husband and did not wish that he or her children should have any present knowledge of what she was doing. Upon being advised that her real estate and, for some reason, the joint bank accounts could not be transferred into a trust without his knowledge, she decided to create a trust and to transfer the two hundred shares of the grocery stock into the trust. She selected Cohen, a friend who had done accounting for the grocery corporation, as cotrustee with herself. She reserved the right to revoke, alter, or amend the trust at any time or from time to time by a writing signed, sealed, and acknowledged by her. Under the provisions of the trust instrument, the trustees were to hold the trust property and any additional property that might be added to it and to pay to or apply for the benefit of the settlor during her lifetime the entire net income and so much of

the principal as she might request. Upon her death the trust was to continue for the benefit of certain named children and was to terminate upon the death of the last survivor of these named children when distribution was to be made to the then living children of the last surviving child, and if there were none then distribution was to be made among those who would have been her heirs at law if she had then died domiciled in this Commonwealth. The indenture of trust was executed in duplicate. One copy was retained by her attorney who kept it in his possession in accordance with her request. Cohen held the other copy, together with the certificate for the two hundred shares of grocery stock and the assignment of the certificate by the settlor attached thereto[1] to which revenue stamps in the amount of $14 were affixed. The judge properly found that no fraud, duress, or coercion was exerted upon the settlor; that she was not the victim of any mistake or undue influence; that she had sufficient mental capacity to understand the nature of her acts in executing the trust; that the indenture of trust created a valid, living trust; that the title to the trust res was after the execution of the trust in the trustees; and that the disposition of the property did not constitute a testamentary disposition in violation of the statute of wills. G. L. (Ter. Ed.) c. 191.

The grocery business was founded and conducted by her first husband. At the time she created the trust the only stockholders besides herself were three of her children. The petitioner, her second husband, so far as appears never had any proprietary interest in that business. It was not unreasonable for her to desire to have the stock in that corporation held for the benefit of the children whom she named and to encourage the trustee to hold the stock during the life of the trust, it being the purpose of the settlor to provide continuity of ownership of the stock and the promotion of harmony in her family in the conduct of said business rather than to secure an income to the trust. If

---

[1] The assignment was made to Mrs. Ascher and Cohen as trustees of the trust. — REPORTER.

her intent in creating the trust was to prevent her husband from participating in the affairs of the grocery business or from enjoying any benefits therefrom, such an intent would not invalidate a trust valid in all other respects. One spouse may dispose of his personal property in his lifetime without the knowledge or consent of the other even for the purpose of preventing the other from acquiring it. *Kelley* v. *Snow*, 185 Mass. 288, 299. *Kerwin* v. *Donaghy*, 317 Mass. 559, 572. *Charest* v. *St. Onge*, 332 Mass. 628, 634–635. The trust res as between the settlor and Cohen was transferred to the trustees by the execution of the assignment which had been duly executed and together with the certificate delivered to Cohen. G. L. (Ter. Ed.) c. 155, § 27 (b). *Stone* v. *Hackett*, 12 Gray, 227. *Hiller* v. *American Telephone & Telegraph Co.* 324 Mass. 24. An equitable interest in the trust property was transferred to the beneficiaries named in the trust, and the fact that they might be divested of such an interest by the exercise of the power to revoke, alter, or amend the trust reserved by the settlor did not make the trust a testamentary disposition of the property. *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 474–475. *Kerwin* v. *Donaghy*, 317 Mass. 559, 567. A settlor may create a valid trust inter vivos reserving powers similar to those just mentioned, making himself a life beneficiary and also a cotrustee. The validity of a similar trust has recently been upheld in *Leahy* v. *Old Colony Trust Co.* 326 Mass. 49, and we need not repeat what has there been said. See 32 A. L. R. (2d) 1270.

*Decree affirmed.*