MARY A. SULLIVAN vs. CHARLES BURKIN, trustee, & others.[1]

Suffolk.   November 7, 1983. — January 23, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Trust,* Revocable trust, Validity.  *Husband and Wife.  Will,* Waiver.

An inter vivos trust, with remainder interests going to others on the set-
   tlor's death, was not testamentary in character either by reason of the
   settlor's retention of a broad power to modify or revoke the trust, of
   the right to receive income, and of the right to invade principal during
   his life, or by reason of the fact that the settlor was the sole trustee.
   [868-869]
A surviving wife, making an election under G. L. c. 191, § 15, had no
   right to share in the assets of a revocable inter vivos trust established by
   the husband over which he had a general power of appointment.
   [869-871]
The estate of a deceased spouse, for purposes of determining the share
   received by a surviving spouse pursuant to an election under G. L.
   c. 191, § 15, will hereafter include the assets of any inter vivos trust
   created during the marriage by the deceased spouse over which he or
   she had a general power of appointment exercisable by deed or by
   will.  [871-873]

CIVIL ACTION commenced in the Suffolk Division of the
Probate and Family Court Department on July 3, 1981.

The case was heard by *Warner,* J., on a motion for sum-
mary judgment.

A panel of Justices of the Appeals Court reported the case
to the Supreme Judicial Court.

*Maurice F. Joyce* for the plaintiff.

*Christopher C. Tsouros* for Charles Burkin.

WILKINS, J.  Mary A. Sullivan, the widow of Ernest G.
Sullivan, has exercised her right, under G. L. c. 191, § 15,
to take a share of her husband's estate.  By this action, she

---

[1] George F. Cronin, Sr., and Harold J. Cronin.

seeks a determination that assets held in an inter vivos trust created by her husband during the marriage should be considered as part of the estate in determining that share. A judge of the Probate Court for the county of Suffolk rejected the widow's claim and entered judgment dismissing the complaint. The widow appealed, and, on July 12, 1983, a panel of the Appeals Court reported the case to this court.[2]

In September, 1973, Ernest G. Sullivan executed a deed of trust under which he transferred real estate to himself as sole trustee. The net income of the trust was payable to him during his life and the trustee was instructed to pay to him all or such part of the principal of the trust estate as he might request in writing from time to time. He retained the right to revoke the trust at any time. On his death, the successor trustee is directed to pay the principal and any undistributed income equally to the defendants, George F. Cronin, Sr., and Harold J. Cronin, if they should survive him, which they did. There were no witnesses to the execution of the deed of trust, but the husband acknowledged his signatures before a notary public, separately, as donor and as trustee.

The husband died on April 27, 1981, while still trustee of the inter vivos trust. He left a will in which he stated that he "intentionally neglected to make any provision for my wife, Mary A. Sullivan and my grandson, Mark Sullivan." He directed that, after the payment of debts, expenses, and all estate taxes levied by reason of his death, the residue of his estate should be paid over to the trustee of the inter vivos trust. The defendants George F. Cronin, Sr., and Harold J. Cronin were named coexecutors of the will. The defendant

---

[2] The report to this court states:

"It appearing to the undersigned justices of this court before whom this case was argued that the case presents a question of unusual public and legal significance (G. L. c. 211A, § 10[B]) and may, in light of the recent discussions within the American Law Institute (see Restatement [Second] of Property — Donative Transfers, § 13.7 [Supp. to Tent. Draft No. 5, August 25, 1982]), raise some question as to the present vitality of such cases as *Kerwin* v. *Donaghy*, 317 Mass. 559, 572 (1945), the said justices hereby report this case for consideration and determination of the Supreme Judicial Court."

Burkin is successor trustee of the inter vivos trust. On October 21, 1981, the wife filed a claim, pursuant to G. L. c. 191, § 15, for a portion of the estate.[3]

Although it does not appear in the record, the parties state in their briefs that Ernest G. Sullivan and Mary A. Sullivan had been separated for many years. We do know that in 1962 the wife obtained a court order providing for her temporary support. No final action was taken in that proceeding. The record provides no information about the value of any property owned by the husband at his death or about the value of any assets held in the inter vivos trust. At oral argument, we were advised that the husband owned personal property worth approximately $15,000 at his death and that the only asset in the trust was a house in Boston which was sold after the husband's death for approximately $85,000.

As presented in the complaint, and perhaps as presented to the motion judge, the wife's claim was simply that the inter vivos trust was an invalid testamentary disposition and

---

[3] As relevant to this case, G. L. c. 191, § 15, as appearing in St. 1964, c. 288, § 1, provides:

"The surviving husband or wife of a deceased person . . . within six months after the probate of the will of such deceased, may file in the registry of probate a writing signed by him or by her . . . claiming such portion of the estate of the deceased as he or she is given the right to claim under this section, and if the deceased left issue, he or she shall thereupon take one third of the personal and one third of the real property; . . . except that . . . if he or she would thus take real and personal property to an amount exceeding twenty-five thousand dollars in value, he or she shall receive, in addition to that amount, only the income during his or her life of the excess of his or her share of such estate above that amount, the personal property to be held in trust and the real property vested in him or her for life, from the death of the deceased. . . . If the real and personal property of the deceased which the surviving husband or wife takes under the foregoing provisions exceeds twenty-five thousand dollars in value, and the surviving husband or wife is to take only twenty-five thousand dollars absolutely, the twenty-five thousand dollars, above given absolutely, shall be paid out of that part of the personal property in which the husband or wife is interested; and if such part is insufficient the deficiency shall, upon the petition of any person interested, be paid from the sale or mortgage in fee, in the manner provided for the payment of debts or legacies, of that part of the real property in which he or she is interested."

that the trust assets "constitute assets of the estate" of Ernest G. Sullivan. There is no suggestion that the wife argued initially that, even if the trust were not testamentary, she had a special claim as a widow asserting her rights under G. L. c. 191, § 15. If the wife is correct that the trust was an ineffective testamentary disposition, the trust assets would be part of the husband's probate estate. In that event, we would not have to consider any special consequences of the wife's election under G. L. c. 191, § 15, or, in the words of the Appeals Court, "the present vitality" of *Kerwin* v. *Donaghy,* 317 Mass. 559, 572 (1945).

We conclude, however, that the trust was not testamentary in character and that the husband effectively created a valid inter vivos trust. Thus, whether the issue was initially involved in this case, we are now presented with the question (which the executors will have to resolve ultimately, in any event) whether the assets of the inter vivos trust are to be considered in determining the "portion of the estate of the deceased" (G. L. c. 191, § 15) in which Mary A. Sullivan has rights. We conclude that, in this case, we should adhere to the principles expressed in *Kerwin* v. *Donaghy, supra,* that deny the surviving spouse any claim against the assets of a valid inter vivos trust created by the deceased spouse, even where the deceased spouse alone retained substantial rights and powers under the trust instrument. For the future, however, as to any inter vivos trust created or amended after the date of this opinion, we announce that the estate of a decedent, for the purposes of G. L. c. 191, § 15, shall include the value of assets held in an inter vivos trust created by the deceased spouse as to which the deceased spouse alone retained the power during his or her life to direct the disposition of those trust assets for his or her benefit, as, for example, by the exercise of a power of appointment or by revocation of the trust. Such a power would be a general power of appointment for Federal estate tax purposes (I.R.C. § 2041(b)(1) [1983]) and a "general power" as defined in the Restatement (Second) of Property § 11.4(1) (Tent. Draft No. 5, 1982).

We consider first whether the inter vivos trust was invalid because it was testamentary. A trust with remainder interests given to others on the settlor's death is not invalid as a testamentary disposition simply because the settlor retained a broad power to modify or revoke the trust, the right to receive income, and the right to invade principal during his life. *Ascher* v. *Cohen*, 333 Mass. 397, 400 (1956). *Leahy* v. *Old Colony Trust Co.*, 326 Mass. 49, 51 (1950). *Kerwin* v. *Donaghy*, 317 Mass. 559, 567 (1945). *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 473-475 (1944). *Kelley* v. *Snow*, 185 Mass. 288, 298-299 (1904). The fact that the settlor of such a trust is the sole trustee does not make the trust testamentary. In *National Shawmut Bank* v. *Joy, supra* at 476-477, we held that a settlor's reservation of the power to control investments did not impair the validity of a trust and noted that "[i]n *Greeley* v. *Flynn*, 310 Mass. 23 [1941], the settlor was herself the trustee and had every power of control, including the right to withdraw principal for her own use. Yet the gift over at her death was held valid and not testamentary." We did, however, leave open the question whether such a trust would be testamentary "had the trustees been reduced to passive impotence, or something near it." *Id.* at 476. We have held an inter vivos trust valid where a settlor, having broad powers to revoke the trust and to demand trust principal, was a cotrustee with a friend (*Ascher* v. *Cohen, supra* at 400) or with a bank whose tenure as trustee was at the whim of the settlor (*Leahy* v. *Old Colony Trust Co., supra* at 51). In *Theodore* v. *Theodore*, 356 Mass. 297 (1969), the settlor was the sole trustee of two trusts and had the power to revoke the trusts and to withdraw principal. The court assumed that the trusts were not testamentary simply because of this arrangement. The *Theodore* case involved trust assets transferred to the trust only by third persons. For the purposes of determining whether a trust is testamentary, however, the origin of the assets, totally at the disposal of the settlor once received, should make no difference. See *Gordon* v. *Feldman*, 359 Mass. 25 (1971), in which the court and the parties implicitly

accepted as valid an inter vivos trust in which A conveyed to himself as sole trustee with the power in A to withdraw income and principal. We believe that the law of the Commonwealth is correctly represented by the statement in Restatement (Second) of Trusts § 57 comment h (1959), that a trust is "not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor-trustee reserves a beneficial life interest and power to revoke and modify the trust. The fact that as trustee he controls the administration of the trust does not invalidate it."

We come then to the question whether, even if the trust was not testamentary on general principles, the widow has special interests which should be recognized. Courts in this country have differed considerably in their reasoning and in their conclusions in passing on this question. See 1 A. Scott, Trusts § 57.5 at 509-511 (3d ed. 1967 & 1983 Supp.); Restatement (Second) of Property — Donative Transfers, Supplement to Tent. Draft No. 5, reporter's note to § 13.7 (1982); Annot., 39 A.L.R.3d 14 (1971), Validity of Inter Vivos Trust Established by One Spouse Which Impairs the Other Spouse's Distributive Share or Other Statutory Rights in Property. In considering this issue at the May, 1982, annual meeting of the American Law Institute the members divided almost evenly on whether a settlor's surviving spouse should have rights, apart from specific statutory rights, with respect to the assets of an inter vivos trust over which the settlor retained a general power of appointment. See Proceedings of the American Law Institute, May, 1982, at 59-117; Restatement (Second) of Property — Donative Transfers, Supplement to Tent. Draft No. 5, at 28 (1982).[4]

---

[4] The reporter, Professor A. James Casner, recommended the following statement: "§ 13.7 Spousal Rights in Appointive Assets on Death of Donee. The spouse of the donee of a power of appointment is entitled to treat appointive assets as owned assets of the donee on the donee's death, only to the extent provided by statute." Restatement (Second) of Property — Donative Transfers, Tent. Draft No. 5 at 108-109 (1982). This statement is consistent with the principles expressed in *Kerwin* v. *Donaghy*,

The rule of *Kerwin* v. *Donaghy, supra* at 571, is that "[t]he right of a wife to waive her husband's will, and take, with certain limitations, 'the same portion of the property of the deceased, real and personal, that . . . she would have taken if the deceased had died intestate' (G. L. [Ter. Ed.] c. 191, § 15), does not extend to personal property that has been conveyed by the husband in his lifetime and does not form part of his estate at his death. *Fiske* v. *Fiske,* 173 Mass. 413, 419 [1899]. *Shelton* v. *Sears,* 187 Mass. 455 [1905]. In this Commonwealth a husband has an absolute right to dispose of any or all of his personal property in his lifetime, without the knowledge or consent of his wife, with the result that it will not form part of his estate for her to share under the statute of distributions (G. L. [Ter. Ed.] c. 190, §§ 1, 2), under his will, or by virtue of a waiver of his will. That is true even though his sole purpose was to disinherit her." In the *Kerwin* case, we applied the rule to deny a surviving spouse the right to reach assets the deceased spouse had placed in an inter vivos trust of which the settlor's daughter by a previous marriage was trustee and over whose assets he had a general power of appointment. The rule of *Kerwin* v. *Donaghy* has been adhered to in this Commonwealth for almost forty years and was adumbrated even earlier.[5] The Bar has been entitled reasonably to rely

---

*supra.* By a vote of 63 to 60, the members rejected the substitution of the following statement under` § 13.7, recommended by an adviser to the project, Justice Raya S. Dreben of the Massachusetts Appeals Court: "Appointive assets are treated as owned assets of a deceased donee in determining the rights of a surviving spouse in the owned assets of the donee if, and only if, the deceased spouse was both the donor and donee of a general power that was exercisable by the donee alone, unless the controlling statute provides otherwise." Restatement (Second) of Property — Donative Transfers, Supplement to Tent. Draft No. 5, at 6 and 28 (1982).

[5] In early opinions, this court considered an intent to deny inheritance rights to be a ground for invalidating an inter vivos transfer, but in the first part of this century it abandoned that position. Compare *Gilson* v. *Hutchinson,* 120 Mass. 27, 28 (1876) (conveyance to a trustee to defraud spouse of her right to dower, invalid), and *Brownell* v. *Briggs,* 173 Mass. 529, 533 (1899) (conveyance to trustee to deprive wife of rights in the hus-

on that rule in advising clients.  In the area of property law, the retroactive invalidation of an established principle is to be undertaken with great caution.  See *Boston Safe Deposit & Trust Co.* v. *Fleming*, 361 Mass. 172, 181-182, appeal dismissed, 409 U.S. 813 (1972); *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 636 (1947).  Cf. *Johnson Controls, Inc.* v. *Bowes*, 381 Mass. 278, 282-283 (1980) (insurance contracts); *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 97-98 (1979) (covenants not to compete made in deeds and leases); *Rosenberg* v. *Lipnick*, 377 Mass. 666, 667 (1979) (antenuptial agreements); *Tucker* v. *Badoian*, 376 Mass. 907, 918-919 (1978) (Kaplan, J., concurring) (relative rights as to the flow of surface water).  Contrast as to tort law, *Payton* v. *Abbott Labs*, 386 Mass. 540, 565-570 (1982). We conclude that, whether or not Ernest G. Sullivan established the inter vivos trust in order to defeat his wife's right to take her statutory share in the assets placed in the trust and even though he had a general power of appointment over the trust assets, Mary A. Sullivan obtained no right to share in the assets of that trust when she made her election under G. L. c. 191, § 15.

We announce for the future that, as to any inter vivos trust created or amended after the date of this opinion, we shall no longer follow the rule announced in *Kerwin* v. *Donaghy*.  There have been significant changes since 1945 in public policy considerations bearing on the right of one

band's property at his death, invalid), with *Leonard* v. *Leonard*, 181 Mass. 458, 462 (1902) (Holmes, C.J.) (intent to defeat wife's claim not sufficient to invalidate an otherwise valid transaction), *Kelley* v. *Snow*, 185 Mass. 288, 299 (1904) (same), *Seaman* v. *Harmon*, 192 Mass. 5, 7 (1906) (surviving wife had no right to dower in real estate purchased by the husband through a straw to defeat the wife's claim), and *Roche* v. *Brickley*, 254 Mass. 584, 588 (1926) (wife's conveyance to a trustee valid even if she made it to defeat any interest of the husband at her death).

Opinions in this Commonwealth, and generally elsewhere, considering the rights of a surviving spouse to a share in assets transferred by the deceased spouse to an inter vivos trust have analyzed the question on grounds of public policy, as if establishing common law principles.  These opinions have not relied in any degree on what the Legislature may have intended by granting a surviving spouse certain rights in the "estate" of a deceased spouse.

spouse to treat his or her property as he or she wishes during marriage. The interests of one spouse in the property of the other have been substantially increased upon the dissolution of a marriage by divorce.[6] We believe that, when a marriage is terminated by the death of one spouse, the rights of the surviving spouse should not be so restricted as they are by the rule in *Kerwin* v. *Donaghy*. It is neither equitable nor logical to extend to a divorced spouse greater rights in the assets of an inter vivos trust created and controlled by the other spouse than are extended to a spouse who remains married until the death of his or her spouse.

The rule we now favor would treat as part of "the estate of the deceased" for the purposes of G. L. c. 191, § 15, assets of an inter vivos trust created during the marriage by the deceased spouse over which he or she alone had a general power of appointment, exercisable by deed or by will. This objective test would involve no consideration of the motive or intention of the spouse in creating the trust. We would not need to engage in a determination of "whether the [spouse] has in good faith divested himself [or herself] of ownership of his [or her] property or has made an illusory

---

[6] At the time of a divorce or at any subsequent time, "the court may assign to either husband or wife all or any part of the estate of the other," on consideration of various factors, such as the length of the marriage, the conduct of the parties during the marriage, their ages, their employability, their liabilities and needs, and opportunity for future acquisition of capital assets and income. G. L. c. 208, § 34, as amended by St. 1982, c. 642, § 1. The power to dispose completely of the property of the divorced litigants comes from a 1974 amendment to G. L. c. 208, § 34. See St. 1974, c. 565. It made a significant change in the respective rights of the husband and wife and in the power of Probate Court judges. See *Bianco* v. *Bianco*, 371 Mass. 420, 422-423 (1976). We have held that the "estate" subject to disposition on divorce includes not only property acquired during the marriage from the efforts of the husband and wife, but also all property of a spouse "whenever and however acquired." *Rice* v. *Rice*, 372 Mass. 398, 400 (1977). Without suggesting the outer limits of the meaning of the word "estate" under G. L. c. 208, § 34, as applied to trust assets over which a spouse has a general power of appointment at the time of a divorce, after this decision there should be no doubt that the "estate" of such a spouse would include trust assets held in a trust created by the other spouse and having provisions such as the trust in the case before us.

transfer" (*Newman* v. *Dore*, 275 N.Y. 371, 379 [1927]) or
with the factual question whether the spouse "intended to
surrender complete dominion over the property" (*Staples* v.
*King*, 433 A.2d 407, 411 [Me. 1981]). Nor would we have
to participate in the rather unsatisfactory process of deter-
mining whether the inter vivos trust was, on some standard,
"colorable," "fraudulent," or "illusory."

What we have announced as a rule for the future hardly
resolves all the problems that may arise. There may be a
different rule if some or all of the trust assets were conveyed
to such a trust by a third person. Cf. *Theodore* v.
*Theodore*, 356 Mass. 297 (1969). We have not, of course,
dealt with a case in which the power of appointment is held
jointly with another person. If the surviving spouse as-
sented to the creation of the inter vivos trust, perhaps the
rule we announce would not apply. We have not discussed
which assets should be used to satisfy a surviving spouse's
claim. We have not discussed the question whether a sur-
viving spouse's interest in the intestate estate of a deceased
spouse should reflect the value of assets held in an inter vivos
trust created by the intestate spouse over which he or she
had a general power of appointment. That situation and
the one before us, however, do not seem readily distinguish-
able. See *Schnakenberg* v. *Schnakenberg*, 262 A.D. 234,
236-237 (N.Y. 1941). A general power of appointment over
assets in a trust created by a third person is said to present a
different situation. Restatement (Second) of Property —
Donative Transfers, Supplement to Tent. Draft No. 5,
reporter's note to § 13.7, at 29 (1982). Nor have we dealt
with other assets not passing by will, such as a trust created
before the marriage or insurance policies over which a
deceased spouse had control. *Id.* at 30, 38.

The question of the rights of a surviving spouse in the
estate of a deceased spouse, using the word "estate" in its
broad sense, is one that can best be handled by legislation.
See Uniform Probate Code §§ 2-201, 2-202, 8 U.L.A. 74-75
(1983). See also Uniform Marital Property Act § 18 (Nat'l
Conference of Comm'rs on Uniform State Laws, July,

1983), which adopts the concept of community property as to "marital property." But, until it is, the answers to these problems will "be determined in the usual way through the decisional process." *Tucker* v. *Badoian,* 376 Mass. 907, 918-919 (1978) (Kaplan, J., concurring).

We affirm the judgment of the Probate Court dismissing the plaintiff's complaint.

*So ordered.*