Fremont-Smith, J.
Plaintiff, Patricia A. Dowd (“Patricia”) brings this action against defendants as trustees of the Robert J. Dowd Trust (“the Trust”), alleging causes of action based on fraudulent conveyance (Count II), undue influence and lack of testamentary capacity (Count III), and the trustees’ failure to pay Florida’s tax on intangible property (Count IV).[2] Defendants move for summary judgment on the grounds that the transfer of assets from a revocable to an irrevocable trust could not, as a legal matter, constitute a fraudulent conveyance; that the claim for undue influence and lack of testamentary capacity does not demonstrate a genuine issue of material fact; and that the alleged failure to include the trust assets in the Trust’s Florida tax return fails to state a cause of action.
BACKGROUND
Patricia and Robert Dowd (“Robert”) were married from April 15, 1985 until Robert’s death on April 29, 1990. On or about October 17, 1985, Robert created an inter vivos trust (“the Trust”), which originally provided that Patricia would receive 25% of the Trust principal outright upon Robert’s death. In November 1988, the Trust was amended to provide that, on Robert’s death, Patricia would receive the income from 25% of the Trust during her life.
In January 1990, Robert came to Boston from his home in Florida to receive treatment for cancer. On January 31,1990, Robert executed the Seventh Amendment to the Trust, in which Patricia remained the life beneficiary of the income from 25% of the Trust. A few days later, however, Robert learned from his attorney, Sullivan, that Patricia had consulted a lawyer in Florida with a view to instituting divorce proceedings there.[3] On February 13, 1990, Robert executed the Eighth Amendment to the Trust which deleted the provision that had provided Patricia with a life estate in the income from 25% of the Trust estate, citing her “lack of concern for me in my illness as demonstrated by her proceeding to terminate our marriage at this time.” On April 23, 1990, Robert executed the Tenth Amendment to the Trust which made the Trust irrevocable, and died six days later.[4] At the time of his death, Robert held no assets in his individual name.
On February 23, 1992, Patricia was appointed, by a Florida Court, Curator of Robert’s estate for the purpose of recovering and taking possession of his assets. When the Florida proceeding was dismissed for lack of personal jurisdiction over Robert or over the Trust assets, Patricia instituted this lawsuit.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(C). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled tojudgmentas amatter oflaw.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Apariy moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by admitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. “(Tlhe opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Bissner, 405 Mass. 207, 209 (1989).
Count II (Fraudulent Conveyance)
Were it possible to view Robert’s execution of the Eighth and Tenth Amendments as a “conveyance” of property, a dispute of material fact would exist as to whether Patricia had the status of a “creditor” of Robert who was deprived of property as a result of a “fraudulent conveyance” as defined in G.L.c. 109A.
A creditor is defined under G.L.c. 109A §1 as “a person having any claim whether mature or unmature, liquidated or unliquidated, absolute, fixed or contingent” and, under Massachusetts law, a wife may qualify as a “creditor” of her husband’s Trust under G.L.c. 109A where, at the time of divestment of trust assets, she was living apart from her husband for justifiable cause and divorce proceedings were imminent. Jorden v. Ball, 357 Mass. 468, 472 (1970). Thus, if the Trust assets here could be viewed as property of Robert’s estate for pur *393 poses of c. 109A, material issues of fact would exist as to whether Patricia was justifiably living apart from Robert and whether a divorce was imminent when Robert executed the Eighth and Tenth Amendments, thereby depriving her of an interest in the Trust.
Here, however, it is clear that the Trust assets were never, as a legal matter, Robert’s property or property of his estate. In Sullivan v. Burkin, 390 Mass. 864, 870-71 (1984), the Supreme Judicial Court held that trust assets would henceforth be considered as property of the settlor spouse and of his estate which a surviving spouse can reach by disclaimer of the will under c. 191, §15, where the deceased spouse, in his sole capacity, had retained a general power of appointment over the trust assets. The Court, however, specifically declined to alter the previous rule (that a husband has an absolute right to dispose of assets placed in an inter vims trust during his lifetime, even if his purpose was to disinherit his spouse) except where the husband had retained, by himself, a general power of appointment.
In the case at bar, Robert did not retain a general power of appointment over the Trust assets in his sole capacity. As this Court ruled in this case, in its earlier “Memorandum of Decision Regarding Plaintiffs Motion for Preliminary Injunction and Defendant’s Motion for Summary Judgment,” dated February 22, 1994 (Quinlan, J.), although Sullivan v. Burkin, 290 Mass. 864 (1984), held that trust assets over which a husband had retained, in his sole capacity, a general power of appointment would henceforth be treated as part of the “estate of the deceased” for purposes of c. 191, § 15, the Supreme Judicial Court carefully limited the effect of its holding to trusts in which a deceased spouse alone had retained a general power of appointment over the assets. As the Trust here provided that Robert was only one of two co-trustees, this Court’s February 22, 1994 decision correctly determined that Patricia had no claim, as a surviving spouse, to the assets, regardless of the challenged amendments. As the Trust assets were therefore not, from a legal standpoint, Robert’s property, or assets of his estate, the Amendments can not, trader the factual circumstances alleged here, be deemed a fraudulent conveyance of his property and the Court cannot, as prayed in Count II, order the trustee ‘To return the assets of the Trust of Robert J. Dowd to the estate.” Accordingly, summary judgment is allowed as to Count II.
Count III (Undue Influence and Lack of Capacity)
To maintain a claim for undue influence, Patricia must show that an unnatural disposition of Robert’s property was made, that he was susceptible to undue influence, that someone had an opportunity to exercise undue influence on him, and that someone in fact used that opportunity to procure the contested distribution through improper means. Heinrich v. Silvernail, 23 Mass.App.Ct. 218, 223 (1987).
Here, not only did Robert not “own” the Trust property for the reasons stated above, but the plaintiff has submitted no evidence to rebut the sworn statement of Robert (attached to Sullivan’s affidavit) that the deposition of the Trust assets was “natural,” once Patricia had ceased to be a natural object of his bounty because of her contemplated divorce of her dying spouse.[5] Nor has plaintiff submitted any evidence that anyone exercised any undue influence over Robert.
With regard to the claim of lack of testamentary capacity, the uncontroverted affidavit of Julio Vimo, M.D., Robert’s treating physician, indicates that he was of sound mind, was in control of his mental faculties and was capable of making his own decisions until the final few hours of his life. Accordingly, summary judgment is allowed on Count III of the complaint.
Count IV (Trustees’ Failure to Pay Florida Intangible Tax)
In Count IV, Patricia claims that Robert’s failure to report Trust assets on the Trust’s Florida tax returns resulted in the State of Florida Department of Revenue assessing $4,014.61 against Patricia. She alleges that, as she was not a trustee of the Trust, she is not liable for the tax.
The State of Florida, however, is not a party to this case, and any dispute between Patricia and the State of Florida as to Patricia’s tax liability should be decided by a Florida Court having jurisdiction over both such parties. Moreover, the uncontroverted affidavit of Norman Posner, the Trust’s accountant, indicates that the Trust did file Florida tax returns each year and that all Florida Trust assets were included in those returns. Accordingly, Sullivan’s motion for summaryjudgment on Count IV of the complaint is allowed.
ORDER
Accordingly, it is ORDERED that defendants’ motion for summary judgment is ALLOWED as to all of the remaining counts of the amended verified complaint (Counts II, III and IV) which are hereby dismissed. Judgment is hereby entered for the defendants.

 Summary judgment was entered for Sullivan on plaintiffs claim for declaratory and injunctive relief (Count I of the complaint) on February 22, 1994.

 Although Patricia and Robert were never divorced, the record before the court does not indicate whether such divorce proceedings were ever even instituted.

 By making the Trust irrevocable, Robert may have intended to place the trust assets beyond Patricia’s reach as assets subject to her statutory share of his estate. See: Sullivan v. Burkin, 390 Mass. 864 (1984) (inter vivos trust in which the settlor retains a general power or appointment will henceforth be subject to being reached by spouse who elects to take statutory share). However, as discussed below, the Trust was already beyond Patricia’s reach for that purpose because Robert had already relinquished sole control of the property even before execution of the Tenth Amendment, so that the Tenth Amendment in the particular circumstances here did not constitute a fraudulent conveyance as to Patricia.

 See affidavit of Robert Dowd attached to affidavit of Charles A. Sullivan. The beneficiaries of the amended Trust are Robert’s retarded adult son and his first wife.