BARRY CANTER[1] *vs.* COMMISSIONER OF PUBLIC WELFARE.[2]

Suffolk. May 8, 1996. - August 2, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED, JJ.

*Medicaid. Trust,* Revocable trust, Beneficiary, Assets of trust.

Discussion of 42 U.S.C. § 1396p, and regulations thereunder, that require the inclusion among the assets of an individual, for purposes of his or her Medicare eligibility, certain resources that may have been transferred to others within prescribed time periods. [426-428]

An appeal from the denial of Medicaid benefits was remanded to the Department of Public Welfare for further consideration whether a husband's amendment of a revocable trust about two weeks before his death in 1990, to delete his wife as a beneficiary of a trust to be created on his death that would then receive the principal of the revocable trust, constituted a transfer of assets that would render the surviving wife ineligible for Medicaid benefits pursuant to 42 U.S.C. § 1396p(c)(1) (1988 & Supp. IV 1992) and regulations thereunder. [432-435] GREANEY, J., dissenting, with whom ABRAMS, J., joined.

CIVIL ACTION commenced in the Superior Court Department on September 10, 1992.

The case was heard by *Peter M. Lauriat,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Donald N. Freedman (Marcia J. Glickman* with him) for the plaintiff.

*Deborah I. Ecker,* Assistant Attorney General, for the defendant.

FRIED, J. The Federal statute and the Commonwealth's regulations at issue in this case require the Department of

---

[1]For the estate of Helen Canter.

[2]Effective July 16, 1993, the responsibility for the administration of the Medicaid program was transferred from the Department of Public Welfare (department) to the Division of Medical Assistance. St. 1993, c. 161. For the purposes of this opinion, we shall refer to the defendant as the department.

Public Welfare (department) in determining Medicaid eligibility to include among the assets of an applicant certain resources that may have been transferred to others within prescribed time periods. The department denied Helen Canter, whom we shall call the plaintiff, Medicaid benefits because of such a transfer, and a Superior Court judge affirmed the denial. We transferred the case here on our own motion, and direct that judgment shall be entered in the Superior Court remanding the matter to the department for further consideration and disposition.

# I

As we stated in the four related cases we decided today, see *Cohen* v. *Commissioner of the Div. of Medical Assistance, ante* 399 (1996), the Medicaid program was instituted as a cooperative Federal and State program to provide health services at government expense to persons unable to afford them. The legislation and regulations we consider in this case are a response to a device by which persons with substantial assets seek to take advantage of the Medicaid program by impoverishing or seeming to impoverish themselves. The device at issue in this case is the practice whereby persons facing the large expense of institutionalization — most commonly in nursing homes in the final years of life — dispose of their assets, often at the last possible moment, so that they appear to be indigent and thus qualify for public assistance. In response to such transfers, in 1982 the Congress added § 1396p(c) to the legislation governing the Medicaid program. See Pub. L. 97-248, 96 Stat. 371 (1982).[3] See generally Note, The Asset Transfer Dilemma, 36 Drake L. Rev. 369 (1987). That provi-

---

[3]Congress has amended 42 U.S.C. § 1396p a number of times since 1982. For the purposes of this case, the statute reads as follows:

"(c) Taking into account certain transfers of assets.

"(1) In order to meet the requirements of this subsection . . . the State plan must provide for a period of ineligibility for nursing facility services . . . in the case of an institutionalized individual . . . who, or whose spouse, at any time during or after the 30-month period immediately before the date the individual becomes an institutionalized individual . . . or, if the individual is not so entitled, the date the individual applies for such assistance while an institutionalized individual disposed of resources for less than fair

sion created a period of Medicaid ineligibility for an applicant who "dispose[s] of resources for less than fair market value." 42 U.S.C. § 1396p(c). This amendment, however, did not prevent Medicaid applicants from artificially impoverishing themselves because Medicaid law, although it provided that the assets of one spouse shall be considered available to the other spouse, see 130 Code Mass. Regs. § 505.180 and § 505.450 (1995),[4] allowed interspousal transfers and transfers by the applicant's spouse to third parties. 42 U.S.C. § 1396p(c)(2)(B)(i). See also Pub. L. No. 101-239, 101st Cong., 1st Sess., reprinted in 1989 U.S. Code Cong. & Admin. News 1906. Thus, an applicant could transfer assets to a spouse and the spouse could then transfer the assets out of the relationship without implicating the asset transfer rules. In 1989, in order to close this loophole, the transfer rules were further amended to include transfers made by the applicant's spouse. See Pub. L. 101-239, Title VI, Subtitle B, Part 2, § 6411(e)(1), 103 Stat. 2271 (1989). The statute provides, for purposes of this appeal, that "in the case of an institutionalized individual . . . who, or whose spouse, at any time during or after the 30-month period immediately before the date the individual becomes an institutionalized individual . . . disposed of resources for less than fair market value," the value of those resources shall be included in the calculation of Medicaid eligibility. 42 U.S.C. § 1396p(c)(1) (1988 & Supp. IV 1992). As it is required to do, see 42 U.S.C. § 1396a(a)(17)(B), the department promulgated implementing regulations, which

---

market value. The period of ineligibility shall begin with the month in which such resources were transferred and the number of months in such period shall be equal to the lesser of —

"(A) 30 months, or

"(B)(i) the total uncompensated value of the resources so transferred, divided by (ii) the average cost, to a private patient at the time of the application, of nursing facility services in the State or, at State option, in the community in which the individual is institutionalized."

42 U.S.C. § 1396p(c)(1) (1988 & Supp. IV 1992).

[4] At the time the department denied benefits to the plaintiff, the regulations appeared at 106 Code Mass. Regs. § 505.000 (1991). In 1993, when the responsibility for the program was transferred to the Division of Medical Assistance, the regulations were codified at 130 Code Mass. Regs. § 505.000 (1995).

provide in relevant part that in determining eligibility for nursing facility services "any asset or interest in an asset owned by a member of the filing unit or his or her spouse shall be considered available if the individual or individual's spouse assigned or transferred such asset or interest at less than fair market value."[5] 130 Code Mass. Regs. § 505.125(A)(2) (1994). The regulations then specify the period that the applicant shall be ineligible:

> "The period of ineligibility shall begin with the month in which the assets were transferred. The number of months in such period shall be equal to the lesser of the following: (1) the number of months that result when the total value of the assets transferred, divided by the average monthly cost of private nursing facility care in the Commonwealth at the time of the application, as determined by the Division, have elapsed; or (2) 30 months."

130 Code Mass. Regs. § 505.125 (D). The ineligibility period essentially requires the applicant to spend down the transferred assets.

According to the uncontested facts as found by the Superior Court judge and the department, the plaintiff's husband, Harold Canter, established a freely revocable and amendable trust on July 14, 1988, the principal of which was a United States Treasury note with a face value of $250,000. Article Five of the trust provided that, if the plaintiff were alive when Mr. Canter died, the principal was to be placed in three trusts to be created at his death of which the plaintiff was a beneficiary. In November, 1990, the plaintiff and her husband were

[5]"Asset" is defined in the regulations as "holdings of value that include, but are not necessarily limited to, cash, bank deposits, securities, real estate, cash value of life insurance, automobiles, boats and trailers, and any other real or personal property." 130 Code Mass. Regs. § 501.500 (1996).

"Filing Unit" is defined as "all individuals whose assets and income must be considered in the determination of the financial eligibility of the assistance unit. An individual may be in more than one filing unit but in only one MA assistance unit." *Id.* See also 130 Code Mass. Regs. § 505.500 (defining "Assistance Unit"); § 505.180 (B) (1996) ("couple's current total countable assets, regardless of the form of ownership" are considered when determining eligibility of institutionalized spouse); § 505.450 (A) (1995) (each spouse has financial responsibility for the other).

institutionalized in a nursing home. On December 13, 1990, Mr. Canter amended his trust by deleting his wife as a beneficiary and naming his son and others as the contingent beneficiaries of the remainder of the trust. On December 29, 1990, Mr. Canter died. On October 9, 1991, the plaintiff applied for medical assistance. The department sent the plaintiff a notice that it intended to deny her application for medical assistance due to a transfer of assets in violation of 130 Code Mass. Regs. § 505.125. The plaintiff appealed and the department denied her appeal.

## II

The department asserts that the plaintiff is properly ineligible for Medicaid assistance for the full thirty-month period after her husband amended his trust to remove her as a contingent beneficiary of the trust. The argument proceeds in four steps: *First*, the beneficiary of a contingent remainder in a revocable trust has an "interest in an asset," as required by the regulations. See 130 Code Mass. Regs. § 505.125(A)(2). As the department puts it in its brief, "[t]he holder of a beneficiary interest of a trust, albeit a revocable trust, has a greater right or interest to the trust asset than one who does not possess a beneficiary interest in that asset at all." *Second*, the husband's amendment of the trust instrument to substitute remainder interests in his son and other family members in place of his wife, constituted a transfer of the wife's interest, described in step one of the argument. *Third*, this transfer, which was entirely gratuitous, was for less than fair market value. Therefore, *Fourth*, the full value of the trust assets at the time of this transfer is countable against the plaintiff for the purposes of calculating her period of ineligibility for Medicaid institutionalization benefits. See 130 Code Mass. Regs. § 505.125(D) (calculation of ineligibility period).

The department's argument is deficient both in logic and practicality. It is true that the contingent remainderman's interest in a revocable trust is greater than that of the random stranger, as the first step posits. One would place some value on the likelihood of contingent interest vesting, but would not conclude that that interest would vest in a random stranger. That being so, the third step also has some plausibility because the interest was transferred for nothing. But it is a non sequitur then to argue, as the fourth step does, that the full

value of that interest must be taken to be the full value of the trust assets. On the contrary, even if we accepted all the prior steps, the value of the asset for purposes of the ineligibility calculation would have to be the full value of the corpus discounted to reflect the likelihood of the contingent interest finally vesting. And it is at this point that considerations of practicality begin to unravel the department's ingenious argument. For, of course, there is no practical way in which the discounted value of the interest may be calculated.[6] And this, like the thirteenth chime of the clock, casts doubt backward on the second step by which the department posited that the change in contingent beneficiary constituted a transfer of an interest, and finally on the entire argument. For it is a classic example of an argument that proves too much. Although the department assures us that the change in the designation of a beneficiary under a life insurance policy or by a codicil to a will (or by the writing of a will where none had existed, or by allowing the disinheriting provisions of a will written long before to remain in effect) "is not at issue in the present case," we are at a loss to see why the department's argument does not exactly fit those cases.

It is no surprise that the department can offer no cases in this or any jurisdiction to support its conclusion,[7] and that the distant analogies for which it reaches are readily distinguishable. The department refers to 2A A. Scott, Trusts

---

[6]The department suggests that the value of the plaintiff's transferred interest is close to if not equal to the full value of the corpus because Mr. Canter was close to death, and there is no indication in the record that Mr. Canter intended to deplete the trust before his death. But these are not the only considerations a prudent purchaser of such an interest would consider. A prudent purchaser would examine the Medicaid rules, including the trust and transfer rules, and consider the influence of these rules on the settlor. To ignore the impact of these rules, as the department does, would be to assume the conclusion of their argument: that the transfer will be ineffective. Once one realizes this, the complexity and indeterminacy of the assessment of value becomes clear and the department's suggestion at oral argument that we remand the case for a determination of value all the more inappropriate.

[7]The plaintiff does somewhat better. A Superior Court judge in O'Neil *vs.* Department of Public Welfare, Middlesex Superior Court No. 91-8798-B (Dec. 14, 1992), declined to apply an earlier, although similar, ineligibility provision to disqualify an applicant for general relief. The nature of the trust, of the applicant's interest, and of the various steps taken to create eligibility in that case were analogous to but not the same as those in issue here.

§ 132, at 8 (4th ed. 1987), where it is stated that the contingent beneficiary of a trust may transfer that interest and that it is reachable by creditors. As far as we can determine, none of the cases cited for those propositions involved revocable trusts which, as here, were still subject to revocation by the grantor. Rather they deal with the very different situation where the contingency depends on external events like the survival of a certain person or the achievement of a specific age. See *Whiteside* v. *Merchants' Nat'l Bank*, 284 Mass. 165 (1933); *Clarke* v. *Fay*, 205 Mass. 228 (1910); *Putnam* v. *Story*, 132 Mass. 205 (1882); *Gardner* v. *Hooper*, 3 Gray 398 (1855). When this court has considered an interest analogous to the plaintiff's interest here, it has described it as a mere expectancy and gave it no legal force. See *Old Colony Trust Co.* v. *Clemons*, 332 Mass. 535, 539 (1955) (where settlor retains right to revoke, he intends that beneficiary's interest not vest until his death); *Commissioner of Corps. & Taxation* v. *Ayer*, 323 Mass. 579, 582-583 (1949) ("[U]ntil the death of the settlors [of revocable trusts] their respective beneficiaries had acquired nothing certain. Until then their ultimate enjoyment . . . was doubtful, and there was no gift"). See also 1A A. Scott, Trusts § 86.1, at 479 (4th ed. 1987). Cf. *Estate of Sanford* v. *Commissioner of Internal Revenue*, 308 U.S. 39, 43-45 (1939) (transfer to a revocable trust not complete until settlor's relinquishment at death of power to revoke); *DeVincent* v. *Commissioner of Corps. & Taxation*, 348 Mass. 758 (1965) (change of beneficiary of a life insurance policy in contemplation of death irrelevant for inheritance tax purposes).

Finally, the department's construction puts a considerable strain on the text of the regulations. The department's regulations speak in terms of assets and define two types of countable assets: "accessible," see 130 Code Mass. Regs. § 505.100 and § 505.150 (defining "inaccessible assets" as assets to which one has "no legal access"); and "available." See § 505.450 ("When spouses reside together . . . assets . . . of both spouses are considered mutually available"). See also § 505.160(J) (measuring assets in a Medicaid qualifying trust that are "deemed available"). Here, the corpus of the

trust was inaccessible to the plaintiff, see § 505.150,[8] although it was "available" to her until Mr. Canter's death. § 505.180 and § 505.450. Thus, if she had applied for Medicaid assistance after the amendment but prior to her husband's death, the entire amount of the corpus would have been "available" to her under the regulations. Her husband's amendment of his revocable trust, then, could not have the effect of a transfer of the corpus because the corpus was as "available" to her for Medicaid eligibility purposes after the amendment as before. (At most, the husband transferred her contingent expectancy, whose value was indeterminate.)

### III

Although we are not convinced by the department's basis for denial, which it urged successfully before the Superior Court and repeats here, we nevertheless are concerned that allowing Canter's position to prevail might seriously undermine the policy of the Federal statute and our regulations. Accordingly we consider an argument neither advanced by the department nor addressed by the Superior Court judge. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943) (where law uncertain and public interest involved, court considered matter not presented properly). See also *Pryor* v. *Holiday Inns, Inc.*, 401 Mass. 506, 509-510 (1988) (collecting cases where court has considered issues not presented properly). Common sense suggests that what Mr. Canter did was to transfer — or arrange for the transfer of — a considerable asset at his death for less than fair market value. It might thus be correct to treat that transfer as one that causes the thirty-month ineligibility period in 130 Code Mass. Regs. § 505.125(D) to start to run. By placing the Treasury note in a revocable trust, Mr. Canter did not part with his ownership of the corpus. See *Kirby* v. *Assessors of Medford*, 350 Mass. 386, 390 (1966); *Estate of Sanford, supra* at 42-45. Accordingly, tax law does not consider the act of

---

[8]It may be true that her defeasible, contingent interest in the corpus was accessible to her prior to the transfer, in the sense that perhaps she might have sold it at a deep discount from its value if vested. See note 5, *supra.* But see *Clarke* v. *Fay*, 205 Mass. 228, 237 (1910) (contingent, although not defeasible, interest so remote that court would not require its sale for the benefit of creditors). But, as we have discussed, this interest is not one which she could have readily converted into any determinate amount of cash to provide for her support.

creating and funding a revocable trust a gift for gift tax purposes. *Burnet* v. *Guggenheim*, 288 U.S. 280, 284-286 (1933) (where settlor retains power to revoke, the "gift" is "inchoate and imperfect"). See also Treas. Reg. § 25.2511-2(b) (1996) (to be a gift the owner must part with "dominion and control as to leave in him no power to change its disposition"). Only on his death did Mr. Canter part with his dominion and control over the corpus, and it is at that moment, pursuant to the revocable trust, Mr. Canter transferred the corpus.[9] See *Commissioner of Corps. & Taxation* v. *Ayer, supra* at 582-583 (date of death of settlor of revocable trust was date beneficiaries of trust "acquired" property for purpose of determining the beneficiaries' basis in that property); *Estate of Sanford, supra* at 42-43 (transfer becomes complete when settlor relinquishes command over the property). Cf. *Page* v. *Commissioner of Revenue*, 389 Mass. 388, 393-395 (1983) (gift in contemplation of death characterized as a transfer).

We are aware that it may be possible to argue pursuant to this reasoning that the disposition of assets pursuant to a will or a life insurance policy might also be considered a transfer of an asset at death. But there are important distinctions. The law does not treat the disposition of assets pursuant to a trust in the same manner it treats assets disposed of by will. A trust that provides for the disposition of assets at the settlor's death is neither invalid as a testamentary disposition nor subject to the Statute of Wills although the trust provides for a disposition at death and is revocable during the settlor's life. See *Sullivan* v. *Burkin*, 390 Mass. 864, 868 (1984). Under the earlier inheritance tax statutes, it was possible to avoid an inheritance tax by disposing of assets pursuant to a revocable, inter vivos trust even if the settlor retained a beneficial interest in the corpus and a right to revoke the trust. See 1A A. Scott, Trusts § 57.5, at 187 (4th ed. 1987). Today, the inheritance tax statutes are drawn broadly to include all dispositions taking effect at death even if the distribution occurs pursuant to a trust. I.R.C. §§ 2035-2038 (1994). G. L. c. 65, §§ 1, 3 (1994 ed.). See *Estate of Sanford, supra* at 42-46;

---

[9]When the settlor transfers funds to an irrevocable trust, the settlor may give up legal and equitable control over these assets such that the placing of assets in this trust could constitute a transfer at that moment. See, e.g., *Steward* v. *Commissioner of Corps. & Taxation*, 348 Mass. 15, 18 (1964).

*Page, supra* at 394-395.[10] In addition, assets that pass by trust constitute nonprobate transfers. See J.F. Lombard, Probate Law and Practice § 2001 (1962 & Supp. 1995); G.G. Bogert, Trusts and Trustees § 233 (rev. 2d ed. 1992). This court recognized the distinction between the disposition of assets by a revocable trust and by a will when it laid down a prospective rule in *Sullivan, supra* at 871-872, that a surviving spouse can reach the assets in an inter vivos revocable trust to satisfy her statutorily entitled share of the estate. The treatment of life insurance proceeds raises a different set of problems and distinctions. See *DeVincent* v. *Commissioner of Corps. & Taxation*, 348 Mass. 758 (1965). Unlike the assets in a revocable trust some or all of the value of an insurance policy may be unavailable to the insured during his or her lifetime.

Thus both testamentary dispositions and life insurance proceeds may require distinct treatment. We note that the regulations do in fact make some distinct provisions for insurance policies. See 130 Code Mass. Regs. § 505.160(F) (1995). We also recognize that there may be a reticence, rooted in tradition, about tampering with testamentary dispositions. The device we have before us here is entitled to no such indulgence. Accordingly we are disinclined to indicate in any way how these two alternative regimes should be treated. Nor are we prepared to rule definitively that at the settlor's death the dispositive provisions of a revocable trust constituted a transfer for the purposes of the regulations. There are too many possible entailments of such a decision that we cannot anticipate, much less judge, in the absence of consideration by an expert agency and briefing by the parties. But neither are we inclined to approve definitively the use of a device so inimical to the policy of the statute. We therefore direct that judgment shall be entered in the Superior Court remanding the matter to the department for further consideration and

[10]The importance of the broadening of the estate tax laws has diminished because in 1976 Congress integrated the estate and gift taxes. There remain a number of differences, however, in the treatment of trusts and estates afforded by tax law. See D.F. Bicker, Living Trusts: Forms and Practice § 8.05 [2] (MB 1996).

disposition, which would then be subject to review in the normal course.[11]

*So ordered.*

GREANEY, J. (dissenting in part, with whom Abrams, J., joins). I see no need in this case to assess the logic or the practicality of the department's argument. Harold Canter, knowing that his death was imminent, and that his wife, who resided with him in the nursing home and who was certain to receive the substantial asset in the trust, made a purposeful transfer of the asset with the intent to sequester it from the department in connection with his wife's nursing home expenses. The transfer, therefore, expressly sought to have those expenses assumed by the public through the Medicaid program. Under the department's regulation that considers assets of spouses who live together "mutually available," there has been a transfer of an asset or an interest in an asset (differentiation between these terms is not of any real significance in this case) in violation of Medicaid requirements. The department acted properly in rejecting Helen Canter's application for Medicaid benefits. As a result, I would not impose the case again on the overburdened department and Superior Court, but would simply affirm the judgment in favor of the department.

---

[11]In the four related cases we decided today, *Cohen* v. *Commissioner of the Div. of Medical Assistance, ante* 399, (1996), we also arrived at a conclusion by a route not urged by the prevailing party, but in those cases we came to the same conclusion as several Superior Court judges and courts in other jurisdictions, while the issue in this case is considered for the first time.