## L.W.K. & another[1] *vs.* E.R.C., executrix,[2] & others.[3]

Middlesex. May 1, 2000. - September 14, 2000.

Present (Sitting at Worcester): MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Parent and Child,* Child support, Support of child born out of wedlock. *Devise and Legacy,* Child born out of wedlock. *Statute,* Construction. *Public Policy.*

Discussion of the obligation of parents to support their children as expressed in State and Federal law. [443-445, 446-447]

This court concluded that a valid child support order pursuant to G. L. c. 209C, § 9, remained in force until the child was emancipated or, in accordance with its terms, "until further order of the court," and the obligation was not extinguished by the obligor's death. [442-443, 445-446, 447-448] COWIN, J., dissenting, with whom IRELAND, J., joined.

The assets of a father's inter vivos trust of which he was settlor and sole beneficiary were properly considered part of his estate upon his death and available to satisfy his court-imposed child support obligations for his daughter born out of wedlock whom he had specifically and intentionally disinherited, and the claim for support was in the nature of a preferred creditor's claim, to be satisfied prior to any testamentary dispositions. [448-449]

This court concluded that a Probate Court judge has continuing jurisdiction under G. L. c. 209C, § 20, to modify a child support order notwithstanding the death of the obligor under the order, in the limited period during the administration of the obligor's estate. [449-451] COWIN, J., dissenting, with whom IRELAND, J., joined.

This court concluded that a child support order should be modified to credit to the father's estate, now the obligor, the amount of Social Security death benefits that the child, as a qualified minor, was entitled to receive based on the father's participation in the Social Security system. [451-452]

This court concluded that a judge in the Probate and Family Court did not have authority under G. L. c. 209C, § 9, to enter an order to secure post-minority educational support by setting aside a lump sum in trust from the estate of the child's deceased father, where the child did not presently qualify for such support. [452-454]

COMPLAINT for modification of a child support order filed in

---

[1]Her minor daughter.

[2]Of the estate of the child's father, D.M.R.

[3]E.R.C. and H.R., trustees of the trust of D.M.R.

the Middlesex Division of the Probate and Family Court Department on May 19, 1995.

After a hearing on cross-motions in limine, the case was reported to the Appeals Court by *Sheila E. McGovern, J.,* on a statement of agreed facts. The Supreme Judicial Court granted a request for direct review.

*Burton Chandler (Darragh K. Kasakoff* with him) for the defendants.

*Margot A. Clower (Karen Dean-Smith* with her) for the child.

MARSHALL, C.J. Pursuant to G. L. c. 215, § 13,[4] and Mass. R. Dom. Rel. P. 64, a judge in the Probate and Family Court reserved and reported four questions concerning the financial obligations of a deceased father's estate to his minor child:

> "1. whether a testator, survived by a minor child to whom he owed . . . support pursuant to a court order, may disinherit that child pursuant to the [omitted child statute,] G. L. c. 191, § 20;

> "2. whether the child's claim for support is in the nature of a preferred creditor's claim;

> "3. whether a posthumous support obligation includes assets of an inter vivos trust; and

> "4. whether an order to secure postmajority educational support may be made in the circumstances of posthumous support."

We discuss the background facts and applicable law before answering the questions.

1. *Background.* The father died on November 20, 1994, at the age of fifty-five. He was divorced at the time of his death. He was survived by two children, an adult daughter from his only

---

[4]General Laws c. 215, § 13, states: "A judge of the probate court by whom a case or matter is heard for final determination may reserve and report the evidence and all questions of law therein for consideration of the appeals court, and thereupon like proceedings shall be had as upon appeal. And if, upon making an interlocutory judgment, decree or order, he is of opinion that it so affects the merits of the controversy that the matter ought, before further proceedings, to be determined by the appeals court, he may report the question for that purpose, and stay all further proceedings except such as are necessary to preserve the rights of the parties."

marriage, and a minor child (child) born on September 10, 1990, to the mother, L.W.K. (mother), to whom he was not married. The mother was forty-two years old at the time of the child's birth. Prior to the father's death, the mother brought a paternity action to establish him as her child's father. On June 11, 1992, after a hearing, a judge in the Probate and Family Court so determined, and ordered the father to pay child support of $100 a week to the mother, the order to remain in effect "until further order of the Court."[5] The father paid the required child support until his death.

On June 3, 1994, the father executed a will that disinherited his minor child, leaving to her the amount of one dollar. He further directed that she "shall not be considered as an heir-at-law of mine" nor "a child of mine or issue of mine for any purpose under this will."[6] The will provided that, after the payment of specific monetary bequests and disposition of certain tangible property, the remainder of the estate be devised and bequeathed to a trust (trust) that the father had previously established on February 3, 1977. On the same day the father also signed a final amendment to the trust that restated all of the trust terms.[7] The trust instrument authorized the trustees, on the father's death, to collect various life insurance policies and any devises and bequests made by the father to the trust. The trust named the father's sister (sister) and his adult daughter (the only child from his quondam marriage) as the sole beneficiaries.

[5]In determining the appropriate amount of child support, the judge considered that the father had a bachelor of science degree from Worcester Polytechnic Institute, and a master's degree from Northeastern University. During the eleven years prior to the paternity action, he had been employed as an instructor of electrical technology at Wentworth Institute, as a reliability engineer and computer analyst at Raytheon Service Company, and as a substitute teacher in various public school systems and area community colleges. At the time of the paternity adjudication the father characterized his occupational status as "[u]nemployed"; his financial statement listed a weekly income of $275.76.

[6]The will noted that the father did not provide equally for his adult daughter and his minor child. That "inequality," he said in the will, "is my wish and not the result of any inadvertence or mistake."

[7]According to the terms of the trust, as amended in 1994, during his lifetime, the father, as settlor, was named the sole beneficiary and was entitled to receive any or all of the income or principal at his request, or, without such a request, all or part of the income or principal at the trustees' discretion. Pursuant to the terms of the trust, the father specifically reserved for himself the right at any time to modify, alter, amend, or revoke the trust itself.

After the father's death, the sister was appointed executrix of his estate. She filed a Federal estate tax return that listed the father's total gross estate as $800,398, and a taxable estate of $648,722.

On the death of the father, the mother filed a claim for Social Security benefits on her child's behalf based on the father's participation in the Social Security system. It was determined that the child, as a qualified minor, was entitled to receive at that time $849 a month in Social Security benefits.[8] The child is entitled to receive these benefits until she turns eighteen or until her nineteenth birthday if she has not finished high school. The child is now ten years old. Her mother has the sole responsibility for her care and upbringing. The child's only source of income is the Social Security benefits, in addition to support from her mother.[9]

A guardian ad litem, appointed to represent the child's interests in the father's estate, filed a complaint for modification of the child support order entered in 1992, and a notice of claim against the estate seeking further support payments for the child.[10] Some time later, a petition for authority to compromise was filed in the estate probate proceeding in which the mother and the sister (executrix of the father's estate) agreed to a settlement of all claims of the child in the amount of $10,000. A second guardian ad litem, appointed to represent the child's interests, filed an opposition to the compromise.[11] After a hearing, the compromise was dismissed and an attorney was appointed to represent the child in the modification action. The judge allowed a joint motion filed by the mother and the executrix to amend the complaint for modification to add the trustees as defendants.

The parties submitted a statement of agreed facts and made a joint request for rulings. The judge ruled preliminarily that (1) the father could not disinherit his minor child to defeat his sup-

---

[8]The amount the child receives was subsequently adjusted and, as of January 1, 1999, was $927.

[9]The financial statement of the mother filed in the 1992 paternity action indicated that the mother was employed as a social worker with a modest income, $644 per week. She owned no real property and had assets of de minimis value.

[10]By temporary order the mother was substituted as the plaintiff in the complaint for modification.

[11]The record does not indicate why a second guardian ad litem was appointed to represent the child.

port obligations; (2) the assets of the inter vivos trust and the estate are subject to the child's support claim; (3) she had the authority to enter an order against the father's estate for future educational support of the child; and (4) the child's receipt of Social Security benefits did not bar further claims for support. Because the judge determined that the case presented questions of first impression, and that answers to the questions materially affected the merits of the claim for modification, she reserved and reported four questions and stayed the proceedings pending an appellate ruling. We granted the defendants' application for direct appellate review.

2. *Questions one and two.* For ease of discussion we address in tandem the first two questions.

Testamentary freedom is not absolute, and certain preexisting obligations have priority over all testamentary dispositions. See, e.g., *Harrison* v. *Stevens*, 305 Mass. 532, 535 (1940) (testamentary dispositions subject to the "claims of creditors and to administration expenses"); G. L. c. 191, § 15, 16 (spousal elective share takes priority over testamentary dispositions). See also H.J. Alperin & L.D. Shubow, Summary of Basic Law § 22.113, at 565 (3d ed. 1996). A legally enforceable obligation to pay child support, like other financial obligations of the testator, takes precedence over testamentary dispositions and must be satisfied prior to any distribution of assets under the will.[12] A

---

[12] Our holding is consistent with that of other jurisdictions. See, e.g., *Taylor* v. *George*, 34 Cal. 2d 552, 556 (1949) (obligation of father to support minor child which is fixed by decree or agreement does not cease on father's death, but survives as charge against his estate); *West* v. *West*, 241 Mich. 679, 684 (1928) ("So solicitous is the law for the welfare of the child that the decree for such support survives the death of the father and may be amended to give the provision for the child's maintenance the effect of a lien upon the estate with priority over rights of the widow and heirs"); *Hornung* v. *Estate of Lagerquist*, 155 Mont. 412, 418-419 (1970) (father's obligation to make child support payments required by divorce decree survive death and are enforceable against his estate where divorce decree required him to pay fixed monthly amount during child's minority without exemption or qualification); *Scott* v. *Wagoner*, 184 W. Va. 312, 316 (1990) (future child support obligations enforceable as lien against estate if compelling equitable considerations present). See also *Garber* v. *Robitshek*, 226 Minn. 398, 402-403 (1948) (child support order in effect "until further order of the court" is sufficient to allow the order to be enforced against deceased parent), and cases cited; *Edelman* v. *Edelman*, 65 Wyo. 271, 291-292 (1948) (child support payments ordered to continue "until further order of the court" survive death of obligor).

parent charged with an obligation to support his[13] child cannot nullify that legal obligation by disinheriting his child pursuant to G. L. c. 191, § 20.[14] Beyond satisfaction of his support obligation, however, a parent is free to exercise his testamentary discretion with respect to a minor child, as all others, and may disinherit her.[15]

In order to answer questions one and two, therefore, we must resolve whether the order to the father to support his minor child survived his death. Specifically we must decide whether a child support order, made pursuant to G. L. c. 209C, § 9, during the father's life, creates an obligation on his estate to continue support until his child reaches majority, or whether any obligations for her future support were extinguished by his death.

The duty of a parent to support a minor child is statutory. See, e.g., G. L. c. 208, § 28; G. L. c. 209, § 37; G. L. c. 209C, § 9. The question, therefore, is one of statutory interpretation. We conclude that the death of the father does not extinguish his duty to support his minor child. We do so for several reasons.

---

[13]We use the male pronoun because the obligor parent in this case is a man.

[14]General Laws c. 191, § 20, provides: "If a testator omits to provide in his will for any of his children, whether born before or after the testator's death, or for the issue of a deceased child, whether born before or after the testator's death, they shall take the same share of his estate which they would have taken if he had died intestate, unless they have been provided for by the testator in his lifetime or unless it appears that the omission was intentional and not occasioned by accident or mistake; provided, however, that no such child or issue shall take any share in any real property in the testator's estate unless a claim is filed in the registry of probate by or in behalf of such child or any of such issue within one year after the date of the approval of the bond of the executor."

[15]In contrast, the Legislature has limited the testamentary freedom of a husband to disinherit his wife (and vice versa), and has provided statutory protection for the wife in such cases. See, e.g., G. L. c. 191, §§ 15, 16. The lack of equivalent legislative protection for minor children, particularly those of divorced parents and those born out of wedlock who do not benefit indirectly from spousal elective share legislation, such as the children of intact families, has been criticized. See, e.g., Note, Disinheritance of Dependent Children: Why Isn't America Fulfilling its Moral Obligation?, 14 Quinnipiac Prob. L.J. 125, 131 (1999). See also M.L. Fellows, Public Attitudes About Property Distribution at Death and Intestate Succession Laws in the United States, 1978 Am. B. Found. Res. J. 319, 366 (1978). But the plain language of the omitted child statute, G. L. c. 191, § 20, makes no distinction between adult and minor children, or between minor children of intact families and those of divorced parents or born out of wedlock, and there is no statutory limitation on the testamentary freedom of the father in this regard.

First, contrary to the dissent, we are not legislating but applying unequivocal policy mandates of the Legislature to the specific facts of this case. For decades extending back into the Nineteenth Century, the Legislature has mandated and this court has recognized that parents have an obligation to support their minor children. The Legislature has expressed that duty in unmistakable terms: "It is the public policy of the commonwealth that dependent children shall be maintained, as completely as possible, from the resources of their parents thereby relieving or avoiding, at least in part, the burden borne by the citizens of the commonwealth." G. L. c. 119A, § 1, as amended through St. 1998, c. 463, § 101 (approved with emergency preamble, Jan. 14, 1999).[16] The Legislature has also decreed that the statutes concerning child support enforcement "shall be liberally construed to effectuate" that public policy. *Id.*

Second, in this Commonwealth there have been recent and profound legislative changes that have increased significantly the obligation of parents to support their children.[17] Federal law has also increased significantly the obligations of parents for

---

[16]While not directly relevant to this case, we note that the Legislature has gone further and declared it "to be against the public policy of the commonwealth for a court of competent jurisdiction to enforce an agreement between parents if enforcement of the agreement prevents an adjustment or modification of a child support obligation when such adjustment or modification is required to ensure that the allocation of parental resources continues to be fair and reasonable and in the best interests of the child." G. L. c. 119A, § 1, as amended through St. 1998, c. 463, § 101 (approved with emergency preamble, Jan. 14, 1999).

[17]See, e.g., Child Support Enforcement Act, G. L. c. 119A, inserted by St. 1986, c. 310, § 10B; and G. L. c. 211B, § 15, inserted by St. 1986, c. 310, § 16A, repealed by St. 1992, c. 379, § 85. See also G. L. c. 208, § 28, as amended by St. 1975, c. 661, § 1 (authorizing support orders for children up to age twenty-one); as amended through St. 1976, c. 279, § 1 (expanding orders beyond support to include education); as amended through St. 1983, c. 233, § 76 (requiring health care coverage be extended to child if obligor has health insurance on group plan); as amended through St. 1991, c. 173, § 1 (authorizing support orders for children up to age twenty-three); as amended through St. 1993, c. 460, § 61 (requiring modification on complaint if there is an "inconsistency" between the existing order and child support guidelines or to provide health care coverage. Modification of child support may enter notwithstanding an agreement of the parents that has independent legal significance). See generally G. L. c. 208, § 36, as appearing in St. 1986, c. 310, § 12 (allowing court to require security for payment of alimony or support); G. L. c. 119A, § 1, inserted by G. L. c. 208, § 34, as amended through St. 1986, c. 310, § 10B (creating child support enforcement commis-

child support.[18] Thus, both State and Federal law are explicit in providing for the broadest possible support of minor children by their parents. Moreover, under the Child Support Enforcement Act an "[o]bligor" is defined as "an individual, or *the estate of a decedent*, who owes *or may owe* a duty of support, or who is liable under a child support obligation," plainly suggesting that the Legislature intended liability for child support obligations to survive the death of a parent (emphasis supplied). G. L. c. 119A, § 1A. That the child support order was entered in a paternity proceeding other than a divorce proceeding is of no significance, for the Legislature has mandated that children born out of wedlock are entitled to the same rights and protections of the law as all other children. See G. L. c. 209C, § 1, inserted by St. 1986, c. 310, § 16.[19]

Third, the Legislature has imposed an explicit duty on parents who divorce and those who give birth to children out of wedlock to support their minor child until they attain their majority. General Laws c. 209C, § 1, imposes child support responsibility on a parent from the child's birth to the age of eighteen, and beyond that period if certain statutory and readily discernible circumstances exist.[20] See *Doe* v. *Roe*, 23 Mass. App. Ct. 590, 594-595 (1987). See also G. L. c. 209, § 37 (imposing support obligations on separated parents of minor children). Where its terms

---

sion and child support trust fund); G. L. c. 208, § 34, as amended through St. 1989, c. 559 (requiring court "also consider the present and future needs of the dependent children of the marriage" in crafting assignment of property in judgment of divorce); G. L. c. 119A, § 12 (*b*), inserted by St. 1986, c. 310, § 10 (*b*) (unpaid child support obligation becomes lien), as amended through St. 1993, c. 460, § 34 (requiring obligor to obtain health care coverage for child).

[18]Federal law mandates the establishment of child support guidelines, 42 U.S.C. § 667, as well as comprehensive enforcement procedures, see 42 U.S.C. §§ 651 et seq. (1994 & Supp. IV 1998). See also Child Support Enforcement Amendments of 1984, appearing in 42 U.S.C. §§ 655, 658, 664, 666, 1305 (1994 & Supp. IV 1998). See also Child Support Recovery Act of 1992, as codified in 18 U.S.C. § 228 (1994 & Supp. IV 1998) (making it a crime for failing to pay past support for child who resides in another State).

[19]We have noted that the primary purpose of the paternity statute is to collect and to enforce child support from a child's biological father. See *Conlon* v. *Sawin*, 420 Mass. 735, 738 (1995).

[20]General Laws c. 209C, § 1, provides in relevant part: "Every person is responsible for the support of his child born out of wedlock from its birth up to the age of eighteen, or, where such child is domiciled in the home of a parent and principally dependent upon said parent for maintenance, to age twenty-one."

are unambiguous, a statute must be held to mean what it plainly expresses. See 2A N.J. Singer, Sutherland Statutory Construction § 46.01 (6th ed. rev. 2000). In this case, the child support order is in force until the child is emancipated or "until further order of the Court." Neither of these contingencies has occurred. We are not free to add a further requirement, beyond what the Legislature has declared, that the father is responsible for the support of his child born out of wedlock "from [her] birth up to the age of eighteen," G. L. c. 209C, § 1, but only until his death.[21]

Our ruling is also consistent with the declared public policy of this Commonwealth "that dependent children shall be maintained, as completely as possible, from the resources of their parents." G. L. c. 119A, § 1. See G. L. c. 209C, § 20. It would be inconsistent with that and other mandates of the Legislature to conclude that a father's court-ordered support obligation abated on his death, depriving his young daughter of the resources necessary for her maintenance. In an intact family, minor children have security against the loss of support when one parent dies, even in the case of testamentary disinheritance, because of the spousal elective share. G. L. c. 191, §§ 15, 16. See also G. L. c. 190, § 1 (spouse's right to share of property not disposed of by will); G. L. c. 193, § 1 (surviving spouse listed first in schedule of persons entitled to appointment to administer intestate's estate); G. L. c. 229, § 1 (right of surviving spouse to bring wrongful death action). Children of divorced parents and children born out of wedlock do not have the same protection. For this reason, we are unpersuaded by the defendants' argument that our holding would unfairly discriminate against children from intact families.

Fourth, a conclusion that child support obligations survive

---

[21] Our decisions concerning alimony are not an "analogous area" of law that provide guidance to legislative policies concerning child support, as the dissent claims. *Post* at 455. The legislatively imposed duty of a parent to support a minor child is materially different from any agreement or order to provide alimony to a former spouse. The Supreme Court of Kansas has explained the difference cogently: "[T]he fundamental difference between the marital and parental duty of parents is that after a divorce the relation of husband and wife is at an end, and all marital obligations not preserved by the decree are at an end, while the relation of parent and child continues unchanged, and a father's obligation to support his offspring continues to exist unless cut off by the decree." *Allison* v. *Allison*, 188 Kan. 593, 597 (1961). Accord *Knowles* v. *Thompson*, 166 Vt. 414, 417 (1997) ("Child support presents an altogether different situation from spousal maintenance").

the death of a parent is consistent with prevailing contemporary legal authority. See, e.g., *Knowles* v. *Thompson*, 166 Vt. 414, 418 (1997), citing *Morris* v. *Henry*, 193 Va. 631, 636 (1952) ("text writers and a decided majority of cases hold that under modern conditions liability of the father is not necessarily terminated by his death, and that there is no sound reason, unless prohibited by statute, why his estate should not be charged with his obligation to support his minor children"). See also *Edelman* v. *Edelman*, 65 Wyo. 271, 291-292 (1948), in which the Wyoming Supreme Court reached the same conclusion fifty years ago. The Uniform Marriage and Divorce Act § 316 (c), 9A U.L.A. 102 (Master ed. 1998), reflects this prevailing view: "Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child but *not by the death of a parent obligated to support the child*" (emphasis added). The comment to that section explains: "[T]his section terminates the obligation of a parent to support a child, only upon the child's emancipation. The *parent's death does not terminate the child's right to support*, and the court may make an appropriate order establishing the obligation of the deceased parent's estate to the child" (emphasis added). *Id.* at 103.

Finally, there is nothing in G. L. c. 191, § 20, that prohibits such a construction. That statute "forbids nothing and compels nothing; it merely provides a framework within which private testamentary decisions may be freely made." *Hanson* v. *Markham*, 371 Mass. 262, 265 (1976). Our conclusion interpreting the legislative mandate that child support obligations do not abate at death will not create any uncertainty for estate planning purposes. See *Hornung* v. *Estate of Lagerquist*, 155 Mont. 412, 419 (1970) ("the enforcement of an obligation for future support presents no greater problems than any other unliquidated claim against an estate"). Unlike alimony, an order to provide for the support of a minor child terminates at a specific age. Accordingly, the total amount of child support that a parent is obliged to pay may be readily determined — in contrast to an order to provide alimony that in many circumstances terminates only when a spouse remarries (a date uncertain in the future) or on the recipient's death (similarly uncertain).[22]

The protection of minor children, most especially those who

---

[22]The National Conference of Commissioners on Uniform State Laws has explained that there are mechanisms readily available to facilitate prompt

may be stigmatized by their "illegitimate" status or who are not supported by divorced parents fully capable of doing so, has been a hallmark of legislative action and of the jurisprudence of this court. Consistent with the public policy so clearly articulated by the Legislature, the estate of the father in this case is charged with his court-imposed obligations to support his minor child. Beyond satisfaction of those obligations — which we address further in our discussion concerning question four — the father may disinherit his minor child.

3. *Question three.* We consider whether the father's support obligation can be satisfied from the assets of his inter vivos trust. We conclude that all the assets of the inter vivos trust established by the father, under which he was the sole beneficiary entitled to funds at his request, and which he solely retained the power to modify, alter or revoke, must be included in the estate and, as such, must be made available to satisfy his child support obligations. Such a ruling is consistent with our law in closely related areas.

We have held that, for the purpose of determining a surviving spouse's elective share, G. L. c. 191, § 15, assets in an inter vivos trust over which the decedent had a general power of appointment, exercisable by deed or by will, constitute the estate of the deceased spouse. See *Sullivan* v. *Burkin*, 390 Mass. 864, 867 (1984).[23] The Appeals Court has similarly recognized that creditors can reach the assets of an inter vivos trust to "the maximum amount which the trustee . . . could pay to [the trustee] or apply for his benefit," in order to satisfy the trustee's debts to them. *State St. Bank & Trust Co.* v. *Reiser*, 7 Mass. App. Ct. 633, 636 (1979). See *Nile* v. *Nile, ante* 390 (2000). See also Restatement (Second) of Trusts § 156 (2) (1959); Restatement (Second) of Property § 34.3 (3) comments h, j

settlement of estates where the decedent has a child support obligation to fulfil. See Uniform Marriage and Divorce Act § 316 (c) comment, 9A U.L.A. 103 (Master ed. 1998) ("To avoid indefinite delay in the settlement of estates, there may be modification or commutation to a lump sum payment 'to the extent just and appropriate in the circumstances' ").

[23]In *Sullivan* v. *Burkin*, 390 Mass. 864, 867 (1984), we said that the estate of the decedent included the value of assets held in an inter vivos trust that the deceased spouse alone retained the power during his or her life to direct in "any inter vivos trust created or amended after the date of this opinion [January 23, 1984]." In this case, the father's inter vivos trust was established on February 3, 1977. It was subsequently amended, however, and restated entirely in 1994. Although not controlling, the *Sullivan* rule is pertinent to our consideration of the inter vivos trust at issue here.

(1990). Our earlier decisions reason that, as to property that a settlor may appoint to himself or his executors, the property could have been devoted to fulfilling debts or a widow's "special interests which should be recognized." *Sullivan* v. *Burkin, supra* at 869. We see no reason not to adopt the same reasoning for purposes of payment of a child obligation debt, and the defendants offer none.[24]

4. *Question four.* We are asked to determine whether an order to secure postminority educational support may be made posthumously. We note, preliminarily, that on a related issue the judge concluded that the Social Security benefits received by the child after her father's death were not a "substitute" for his child support obligations, but a credit to him. The judge did not report that question to us. However, that issue is inextricably connected to our consideration of the posthumous order to pay some amount for the child's college education: both issues require us to consider whether the death of a parent warrants reconsideration and possible modification of the original child-support order.

The judge found that the child would be entitled to receive monthly Social Security benefits until her eighteenth birthday, and possibly to the age of nineteen if she has not completed her high school education as of that date. She further found that the child's mother would be more than sixty years of age at the time the child is ready to enter college and that other than the support the child receives now, "there are no other sources of funds for her present and future needs." The judge concluded that she had the authority "to set aside a lump sum in trust as security for [the child's] future educational support if the assets are sufficient," and that the amount for educational support "may be made contingent upon the child's eligibility for that award under G. L. c. 209C, § 9." She noted that "[i]n this way, the estate administration will not be unduly prolonged." As to the Social Security benefits, she concluded that the benefits "act as a 'credit' to the obligor in determining the appropriate amount of support in a modification hearing, and not as a substitute for

---

[24]The defendants suggest that, if we determine that the assets of the inter vivos trust can be reached to satisfy the father's support obligations, our rule should be prospective only. In *Sullivan* v. *Burkin, supra,* we decided to apply our rule prospectively because our holding there was "a retroactive invalidation of an established principle." *Id.* at 871. There is no such "established principle" in this case, and no merit to the defendants' suggestion.

that support obligation." Because the order was interlocutory, the judge did not specify any specific sum to be set aside "in trust" as security for the child's future educational support, nor did she determine the amount of support obligation, taking into account the "credit" of the Social Security benefits.

The judge's authority to enter or to modify a support order is statutory. G. L. c. 209C, § 20. General Laws c. 209C, § 20, provides in relevant part that a "court with original jurisdiction . . . *has continuing jurisdiction,* upon a complaint filed by a person or agency entitled to file original actions, to modify judgments of support, custody or visitation"[25] (emphasis supplied). See also G. L. c. 208, § 28 ("Upon a complaint after a divorce, filed by either parent or by a next friend on behalf of the children after notice to both parents, the court may make a judgment modifying its earlier judgment as to the care and custody of the minor children . . ."). Because an obligation to provide child support survives the death of a parent, a judge must have the authority to modify any such obligation.[26] Our statutes contain no provision that the judge's "continuing jurisdiction" while a child is a minor is conditional on her parent being alive. Importing such a requirement into the statute

---

[25]General Laws c. 209C, § 20, provides, in part: "A court with original jurisdiction pursuant to section three has continuing jurisdiction, upon a complaint filed by a person or agency entitled to file original actions, to modify judgments of support, custody or visitation; provided however, that no modification concerning custody or visitation shall be granted unless the court finds that a substantial change in the circumstances of the parties or the child has occurred and finds modification to be in the child's best interests. Except as restricted by section twenty-three, the court may also modify a judgment to protect a party or child. In furtherance of the public policy that dependent children be maintained as completely as possible from the resources of their parents and on a complaint filed after a judgment of support, orders of maintenance and for support of minor children shall be modified if there is an inconsistency between the amount of the existing order and the amount that would result from application of the child support guidelines promulgated by the chief justice for administration and management or if there is a need to provide for the health care coverage of the child."

[26]This is the conclusion of the overwhelming majority of other jurisdictions that have considered the issue. See, e.g., *Kress* v. *Kress,* 219 Cal. App. 2d 173, 174 (1963); *In re Marriage of Meek,* 669 P.2d 628, 629-630 (Colo. Ct. App. 1983); *Matter of Estate of Champagne,* 153 Ill. App. 3d 560, 564 (1987); *Estate of Brummett* v. *Brummett,* 472 N.E.2d 616, 619-620 (Ind. Ct. App. 1984); *Bowling* v. *Robinson,* 332 S.W.2d 285, 287 (Ky. Ct. App. 1960); *West* v. *West,* 241 Mich. 679, 684 (1928); *Garber* v. *Robitshek,* 226 Minn. 398, 402 (1948); *Hornung* v. *Estate of Lagerquist,* 155 Mont. 412, 419 (1970); *Smith* v. *Funk,* 141 Okla. 188, 191 (1930).

would conflict with the overriding public policy clearly articulated by the Legislature we described earlier. In *DuMont* v. *Godbey*, 382 Mass. 234, 240 (1981), we held that posthumous modification of an alimony award was permitted ("Probate Court could properly determine what, if any, payments were due after the death of the husband, and could modify its decree not only as to the future, but also as to arrears"). Recognition of posthumous modification of a child support order is more compelling because the express language of G. L. c. 209C, § 20, provides a judge with continuing jurisdiction. See G. L. c. 208, § 28.

The original 1992 support order did not contain any provision for his child's later educational support. The terms of that order, however, made it subject to further modification, and, as the judge in this case found, in the eleven-year period prior to the paternity action, the father had held several positions of employment commensurate with his educational background and expertise. But at the time of the hearing he characterized his occupational status as "[u]nemployed." He was fifty-two years of age at the time, and there is no suggestion that he would not have attained gainful employment subsequent to the paternity adjudication.

A support order may be modified if the judge finds a "substantial change in the circumstances of the parties or the child has occurred and finds modification to be in the child's best interests." G. L. c. 209C, § 20. See G. L. c. 208, § 28. While nothing mandates that the death of the parent-obligor automatically results in a "substantial change in circumstances" warranting modification, this case plainly meets that standard. The child now receives Social Security benefits as a result of the father's death that were not earlier available. Moreover, in contrast to the period before the father's death, any resources that may be necessary to maintain his young daughter are available only for the limited period during the administration of the estate; beyond that the support order can no longer be changed by "further order of the Court."

With respect to the effect of the now-available Social Security benefits, we previously have held, along with the majority of States, that a noncustodial parent who receives Social Security disability income benefits is entitled to modification of his child support obligation. See *Rosenberg* v. *Merida*, 428 Mass. 182, 185-186 (1998). See generally Annot., 34 A.L.R. 5th 447, 469-

487, 498-503 (1995). We have also decided to treat Social Security retirement benefits the same as disability income benefits. See *Rosenberg* v. *Merida, supra* at 186 n.4. See also *Cohen* v. *Murphy*, 368 Mass. 144, 147 (1975). We agree with the conclusion reached by the judge in this case that the same logic should extend to Social Security death benefits. Survivor's benefits are to be used for the beneficiary's "current maintenance," which includes the "cost incurred in obtaining of food, shelter, clothing, medical care, and personal comfort items." 20 C.F.R. § 404.2040 (a)(1), (c) (2000). The benefits are designed to replace a deceased parent's income that would otherwise be available for the child's current maintenance. Those benefits, now totaling $927 a month, as of January 1, 1991, must be considered a credit to the father's estate in determining child support obligations. See *Brewer* v. *Brewer*, 244 Neb. 731, 740 (1993), and cases cited. See generally Annot., 34 A.L.R. 5th 447, 507-513 (1995). The child support order must be modified to reflect this credit.

The question whether a judge may posthumously "set aside a lump sum in trust as security for future educational support" for the child is a more difficult one. The Legislature has explicitly provided that in some circumstances parents have an obligation to provide educational support for children who have attained the age of eighteen: "The court may make appropriate orders of maintenance, support *and education* for any child who has attained age eighteen but who has not attained age twenty-one, who is domiciled in the home of a parent and is principally dependent upon said parent for maintenance" (emphasis added). G. L. c. 209C, § 9. As a general rule, support orders regarding the *future* payment of "post-high school educational costs are premature and should not be made." *Passemato* v. *Passemato*, 427 Mass. 52, 54 (1998). We have, however, upheld an order creating an educational trust for a minor child who is neither about to attend nor already enrolled in higher education; those cases must be "based on the particular facts" of the case. *Id.* See *Bush* v. *Bush*, 402 Mass. 406, 410 (1988) (child support orders should reflect "current needs" of child).

The judge here appropriately recognized that an order for postminority support for a young child would generally be premature, but relied on our decision in *Passemato* v. *Passemato, supra*, to conclude that the "circumstances of posthumous support" was a valid exception to the general rule because

"[k]eeping the estate administration open for a decade or more poses significant problems and expense." We share the judge's concern that children born out of wedlock (or whose parents are divorced) and who suffer the death of a parent before they reach majority should not be deprived of access to parental support for their educational needs when they reach the age of eighteen. On the other hand, the Legislature plainly contemplated that a child seeking such support had to "attain age eighteen" before doing so. Additionally, the statute provides that at age of eighteen a child may be entitled to such support only if "domiciled in the home of a parent" and "dependent upon said parent for maintenance." G. L. c. 209C, § 9. These contingencies make plain the Legislature's desire that awards for educational support be reserved for those cases where an award would meet the current needs of the child. To allow a judge to secure funds in trust for a child's future education at a time when the judge cannot foresee whether the award will be warranted under the statute and where, because of death, the parent cannot later challenge the validity of the use of funds held "in trust" for educational needs is beyond what the Legislature may have intended. In that respect this case differs from our holding in *Passemato* v. *Passemato*, *supra*, where, presumably, the mother could later challenge the expenditure of specific funds set aside for the future educational needs of her children.

The Legislature has increased significantly the obligations of parents to support their children, imposing an obligation to provide support for their children's educational needs after the age of eighteen. Because the statute places limitations on educational support awards and does not limit general support awards for children under the age of eighteen in the same way, we conclude that the establishment of an educational trust fund while the child is ten years old and where there can be no showing that she presently meets the statutory requirements of G. L. c. 209C, § 9, is not authorized in this case.[27] Our opinion is bolstered by the public policy that a testator should be free to dispense with his estate as he sees fit. G. L. c. 191, § 1. See *Damon* v. *Damon*, 312 Mass. 268, 271 (1942) ("a testator has a right to dispose of his own property with such restrictions and limitations not repugnant to law as he sees fit"). While we have already explained that this interest is not always paramount,

---

[27]The Legislature may wish to clarify whether support for a minor child's future educational needs may be ordered on the death of an obligor-parent.

absent a more clear expression from the Legislature we think a judge in the Probate Court lacks the authority to order future educational support to a child who has not yet attained the age of eighteen, because of the death of her father.

5. *Answers to reported questions.* We conclude that the judge's questions, as reported, must be answered as follows: (1) a testator survived by a minor child may disinherit that child, pursuant to G. L. c. 191, § 20, subject to the prior satisfaction of all of his child support obligations, present and future; (2) a minor child's claim for support is in the nature of a preferred creditor's claim and must be satisfied prior to any testamentary dispositions; (3) assets in an inter vivos trust containing the terms of the trust at issue here (see note 7, *supra*) can be reached to satisfy support obligations; and (4) a judge in the Probate and Family Court does not have the authority to enter an order after the death of the obligor to secure postminority educational support for a child who does not presently qualify for such support pursuant to G. L. c. 209C, § 9.

*So ordered.*

COWIN, J. (dissenting, with whom Ireland, J., joins). The court today decides that a child support order issued pursuant to G. L. c. 209C, § 9, survives the death of the father unless a court order specifically provides that the obligation is terminated on death. I would conclude that such an order survives an obligated father's death only if a judge has specifically provided for its survival and the Probate Court judge here has not so provided.

I agree with the court that "certain preexisting obligations have priority over all testamentary dispositions." *Ante* at 442. In addition, I agree that a judge has the power to order child support that survives an obligated parent's death and that such an order is a "legally enforceable obligation . . . [that] takes precedence over testamentary dispositions and must be satisfied prior to any distribution of assets under the will." *Ante* at 442. I disagree with the court, however, that G. L. c. 209C, § 9, expresses the Legislature's intent that child support orders are presumed to survive an obligated father's death unless otherwise provided by a court order or that we can glean that intent from the general legislative policy in favor of parents supporting their minor children or from other statutory provisions.

The court relies on the portion of G. L. c. 209C, § 1, that provides that a father is responsible for the support of his child born out of wedlock "from . . . birth up to the age of eighteen," to reason that child support orders continue until the child reaches the age of eighteen regardless of whether the father survives. In my view, the court reads too much into this statutory language. This provision merely states the duration for which a child is eligible to receive support; it is not an indication that the Legislature intended this provision to comprise a comprehensive statement of the circumstances that may cause a support obligation to terminate.

As child support is a creature of statute, see, e.g., G. L. c. 208, § 28; G. L. c. 209, § 37, G. L. c. 209C, § 9, and see also *Gediman* v. *Cameron*, 306 Mass. 138, 140 (1940), and cases cited, courts are not entitled to add to the statutory scheme. A policy that support orders shall automatically survive the death of obligors should be based on a clear expression of legislative intent. Had the Legislature intended that such support orders were automatically to survive a parent's death, it would presumably have provided so expressly. In the absence of such an express statement of intent, I am not prepared to conclude that orders for child support survive the obligated parent's death by implication.

In the analogous area of alimony, we have long held that orders do not survive the death of the obligated party unless ordered by the court. *Barron* v. *Puzo*, 415 Mass. 54, 56 (1993) ("As a general rule, an order for the payment of alimony ceases with the death of the party obligated to pay it unless the decree or judgment provides otherwise or arrearages are due and unpaid"), and cases cited. When amending statutes, we presume that the Legislature is aware of the prior state of the law as explicated by the decisions of this court. *Opinion of the Justices*, 408 Mass. 1215, 1222 (1990), and cases cited. In view of our alimony decisions, it is unlikely that the Legislature would have intended that support obligations continue beyond the obligor's death without specifically so stating. A provision in the child support statute establishing the age requirements for the child to receive support does not indicate a legislative intent that support orders survive the death of the obligor. This provision is silent regarding circumstances other than age that may terminate the support obligation. If it is a desirable policy to continue support beyond the death of the obligor, it is not for this court

to make such policy decisions. *Commonwealth* v. *Leno*, 415 Mass. 835, 841 (1993) (court should not substitute its notions of correct policy for that of the Legislature).

The court also relies for its decision on the public policy of this "commonwealth that dependent children shall be maintained, as completely as possible, from the resources of their parents," *ante* at 444, quoting G. L. c. 119A, § 1, and various legislative enactments that have increased the obligations of parents to support their children. These general expressions of legislative policy and unrelated statutory changes have little to do with deciding the question before the court. The court is faced with a specific question of statutory interpretation, i.e., whether a child support order is presumed to survive an obligated parent's death. In the absence of specific language so extending the support obligation, the court's reliance on unrelated statutory provisions and general policy expressions to reach its conclusion is misplaced and is an attempt to justify what is essentially judicial legislation.[1] The court cannot glean from these sources a legislative intent that support orders survive an obligated party's death. Absent a more direct legislative expression of intent, the general policy of providing support for children, the unrelated child support statutory enactments, and the provision of G. L. c. 209C, § 1, establishing the child's age eligibility for support do not compel a decision that support orders survive an obligated party's death absent an express provision in the support order.[2]

Therefore, the only question that remains is whether the Probate Court judge in this case issued a child support order that survived the father's death. The support order entered against the father states: "Defendant to pay to the plaintiff the sum of $ 100.00 beginning forthwith and each week thereafter

[1]The court also cites as authority the Uniform Marriage and Divorce Act, 9A U.L.A. 102 (Master ed. 1998), which provides: "[P]rovisions for the support of a child are terminated by emancipation of the child but not by the death of a parent obligated to support the child." The Legislature is likely aware of the existence of proposed uniform State laws and it has not chosen to adopt the provisions relied on by the court. If the existence of the Uniform Marriage and Divorce Act is at all instructive, it suggests that the Legislature has chosen not to follow the position advocated by the court.

[2]It is noted that the possibility of the death of an obligated parent during the support period is addressed by probate judges when they require the obligor to purchase a life insurance policy to cover such eventuality. See *Taverna* v. *Pizzi*, 430 Mass. 882, 885 (2000).

as child support. . . . All until further order of the Court." Ordering the support obligation to remain in effect "until further order of the Court" is not an expression by the judge that the order is to continue to be enforced after the father's death. General Laws c. 209C, § 20, provides that in all cases in which a court enters a judgment of support for a child, the court maintains "continuing jurisdiction" to modify that order in the case of a "substantial change in the circumstances of the parties or the child." The "until further order" expression merely reflects the court's statutory authority to make future modifications; it is not a statement as to the order's duration. Consequently, the order at issue in this case does not provide for the payment of child support after the death of the father.

Therefore, I respectfully dissent.