L.M.[1] *vs.* R.L.R., executor.[2]

Plymouth. May 5, 2008. - June 19, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Parent and Child,* Child support, Support of child born out of wedlock. *Devise and Legacy,* Child born out of wedlock. *Public Policy. Statute,* Construction.

This court concluded that the unequivocal policy mandates of the Legislature concerning the support and protection of nonmarital children permitted a probate judge to enter (and subsequently enforce) an initial award of child support after the death of the obligor (here, the child's father), where, although an order of child support had never entered against the father under G. L. c. 209C, § 9, during his lifetime, paternity was not disputed. [685-689]

COMPLAINT to establish paternity filed in the Plymouth Division of the Probate and Family Court Department on October 12, 2006.

A motion to dismiss was heard by *Catherine P. Sabaitis,* J., and the case was reported to the Appeals Court by her. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Diane M. Mulligan* for the plaintiff.

*John J. Spillane* (*Matthew T. Spillane* with him) for the defendant.

GREANEY, J. Pursuant to G. L. c. 215, § 13, and Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), a judge in the Probate and Family Court reserved and reported the question whether a judge of that court has authority under G. L. c. 209C, § 9,[3] to enter an initial award of child support, for the benefit

---

[1]Guardian of Jaclyn, a pseudonym.

[2]Of the estate of J.M.M.

[3]General Laws c. 209C, § 9 (*a*), addresses orders for child support in paternity actions. The statute provides, in pertinent part:

"If the court finds that a parent is chargeable with the support of a [nonmarital] child, the court shall make an order . . . requiring a parent to pay weekly or at other fixed periods a sum for and toward the current support and maintenance of such child. The court may make ap-

of a nonmarital[4] child, after the death of the obligor, the child's father. We transferred the report here on our own motion, and answer the question in the affirmative with the qualifications noted herein.

The background of the case is as follows. J.M.M. and L.M. had a nonmarital relationship prior to 1992, ending in July, 1998. During this relationship, on October, 17, 1992, a child whom we shall call Jaclyn was born. J.M.M. is named as Jaclyn's father on her birth certificate. In 1993, J.M.M. and L.M. executed a voluntary acknowledgment of parentage that they filed with the registry of vital statistics pursuant to G. L. c. 46. See G. L. c. 209C, § 2.[5]

Although J.M.M. eventually married someone other than L.M. and had two daughters from that marriage, he maintained a good relationship with Jaclyn. Jaclyn had a positive relationship with her two half-sisters and J.M.M.'s wife. After his marriage, J.M.M. continued to support Jaclyn financially. He volun-

---

propriate orders of maintenance, support and education for any child who has attained age eighteen but who has not attained age twenty-one, who is domiciled in the home of a parent and is principally dependent upon said parent for maintenance. The court may make appropriate orders of maintenance, support and education for any child who has attained age twenty-one but who has not attained age twenty-three if such child is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance due to the enrollment of such child in an educational program, excluding educational costs beyond an undergraduate degree. Upon the petition of a party, the court shall also order past support for the period from the birth of the child to the entry of the order . . . ."

[4] A "nonmarital child" describes a child born to parents who are not legally married to each other. See *Woodward* v. *Commissioner of Social Sec.*, 435 Mass. 536, 543 n.12 (2002).

[5] General Laws c. 209C, § 2, provides, in pertinent part:

"Paternity may be established by filing with the court, the clerk of the city or town where the child was born or the registrar of vital records and statistics an acknowledgment of parentage executed by both parents . . . . Upon receipt of an acknowledgment of paternity, the clerk of such city or town shall forward the original acknowledgment to said registrar as provided in chapter 46. Upon receipt of an acknowledgment of parentage . . . the court shall transmit to the registrar of vital records and statistics a certified copy of the acknowledgment . . . together with such statistical information as said registrar may require . . . . Actions to establish support obligations or for custody or visitation rights may also be filed pursuant to this chapter."

tarily paid fifty dollars a week to L.M. in child support and yearly tuition for her private school, as well as all associated expenses such as uniforms, supplies, and fees. J.M.M. paid the costs of Jaclyn's extracurricular activities, which included guitar, ice skating, and horseback riding lessons. J.M.M. maintained Jaclyn on his health insurance policy, paid the copayments for medical appointments, and paid for her optical and dental care. In 2005, J.M.M.'s support-related payments for Jaclyn totaled approximately $19,795.

In 2003, J.M.M. executed a will in which he named Jaclyn as one of his children. In his will, J.M.M. bequeathed all of his assets to his wife. J.M.M., however, named Jaclyn as a residual legatee along with his other children, with distributions to be made to them in equal shares. J.M.M. named the defendant, his father-in-law, as his executor.

On April 1, 2006, J.M.M. died in an automobile accident. L.M. has not received any support payments for Jaclyn since J.M.M.'s death.[6] No complaint for child support under G. L. c. 209C was ever filed prior to J.M.M.'s death due to his voluntary support of Jaclyn.[7]

After being appointed Jaclyn's guardian, L.M. timely filed a complaint in the Probate and Family Court against the defendant under G. L. c. 209C, seeking orders establishing paternity and providing for the payment of child support. See G. L. c. 190, § 7[8]; G. L. c. 197, § 9.[9] The defendant moved to dismiss the

---

[6]Jaclyn currently receives $992 a month in Social Security survivor benefits. Her counsel represented at oral argument that she also received $200,000 in life insurance proceeds.

[7]There were no written agreements between L.M. and J.M.M. at any time concerning custody, visitation, or child support.

[8]General Laws c. 190, § 7, provides, in pertinent part: "If a decedent has acknowledged paternity of a person born out of wedlock or if during his lifetime or after his death a decedent has been adjudged to be the father of a person born out of wedlock that person is heir of his father . . . . A person may establish paternity if, within the period provided under [G. L. c. 197, § 9,] for bringing actions against executors and administrators, such person either (*a*) delivers to the executor or administrator an authenticated copy of a judgment rendered by a court of competent jurisdiction during a decedent's lifetime adjudging the decedent to be the father of a person born out of wedlock, or (*b*) commences, in a court of competent jurisdiction, an action in which the executor or administrator is a named party and in which such paternity is ultimately proved."

[9]General Laws c. 197, § 9 (*a*), provides that an executor "shall not be held

complaint, arguing that, where there had never been an order of child support entered against J.M.M. during his lifetime under G. L. c. 209C, § 9, the judge lacked authority to enter an initial award of child support after J.M.M.'s death (which would then be enforceable against J.M.M.'s estate). The judge disagreed and denied the motion. The judge then entered an order deferring action on pending motions made by L.M., and entered her reservation and report.

1. We have previously held that an order of child support, for the benefit of a nonmarital child, *made during the obligor's life* may survive the obligor's death and be enforced against his estate. *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 443-448 (2000).[10] We have not decided, however, whether an *initial* order of child support for a nonmarital child may enter *after* the death of the obligor and be enforceable against his estate. We conclude that, where paternity is not disputed (as is the case here), the policy mandates of the Legislature concerning support and protection of nonmarital children permit the entry and enforcement of such order.[11]

The considerations comprehensively discussed in *L.W.K.* v. *E.R.C.*, *supra* at 442-448, including exceptions to testamentary freedom, legislative changes increasing protection for children, explicit legislative mandates concerning child support, public policy concerns, and prevailing contemporary legal authority, apply equally here. Of paramount importance to our conclusion is the existence of the continuing obligation of parents to support their children. The law has long imposed "a duty on parents 'to support, provide for and protect the children they bring forth' (at least those children brought forth in a traditional family context)." *T.F.* v. *B.L.*, 442 Mass. 522, 538 n.2 (2004) (Greaney, J., concur-

to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased."

[10]We explained that testamentary freedom is not absolute, and that certain preexisting obligations, including a legally enforceable obligation to pay child support, take priority over testamentary dispositions. *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 442 (2000). We went on to state that the obligation to support a child cannot be nullified by a testamentary provision expressly disinheriting the child. *Id.* at 442-443.

[11]Insofar as child support is concerned, we no longer follow the antiquated sentiments expressed in *Gediman* v. *Cameron*, 306 Mass. 138, 141 (1940).

ring in part and dissenting in part), quoting *Commonwealth* v. *Brasher*, 359 Mass. 550, 556 (1971). See *Taverna* v. *Pizzi*, 430 Mass. 882, 884 (2000). The Legislature has set forth this duty in "unmistakable terms," stating: "It is the public policy of the commonwealth that dependent children shall be maintained, as completely as possible, from the resources of their parents thereby relieving or avoiding, at least in part, the burden borne by the citizens of the commonwealth." *L.W.K.* v. *E.R.C.*, *supra* at 444, quoting G. L. c. 119A, § 1. To "effectuate" that public policy, the Legislature has declared that the statutes concerning child support enforcement "shall be liberally construed." *L.W.K.* v. *E.R.C.*, *supra*, quoting G. L. c. 119A, § 1.

The Legislature has extended the provision of child support to children who have not been born (or who do not remain) in a traditional family context. Indeed, the protection of nonmarital children, as well as children of divorced parents, "has been a hallmark of legislative action and of the jurisprudence of this court." *L.W.K.* v. *E.R.C.*, *supra* at 448. With respect to the provision of child support for nonmarital children, the Legislature expressly has mandated, by enacting G. L. c. 209C,[12] that such children be supported by their biological parents:

> "Children born to parents who are not married to each other shall be entitled to the same rights and protections of the law as all other children. It is the purpose of this chapter to establish a means for such children either to be acknowledged by their parents voluntarily or, on complaint by one or the other of their parents . . . to have an acknowledgment or adjudication of their paternity, *to have an order for their support* and to have a declaration relative to their custody or visitation rights ordered by a court of competent jurisdiction. . . . *Every person is responsible for the support of his child born out of wedlock* from its birth up to the age of eighteen, or, where such child is domiciled in the home of a parent and principally dependent upon said parent for maintenance, to age twenty-one. *Each person charged with support under this section shall be required to furnish support* according to his financial abil-

---

[12]General Laws c. 209C does not speak to the circumstance of the death of an obligor of child support. Nothing in the statute expressly prohibits the result we reach.

ity and earning capacity pursuant to the provisions of this chapter." (Emphasis added.)

G. L. c. 209C, § 1.

That one parent of a nonmarital child may forgo petitioning the court for an order of support under G. L. c. 209C, § 9, from the other parent, who undisputedly is a "person charged with support" under § 1, does not negate the status of the other parent as continually being a "person charged with support." A parent may choose to avoid seeking a court order for support pursuant to § 9 for a variety of reasons, such as financial limitations or finding resort to court intervention unnecessary because the other parent voluntarily has been supporting the nonmarital child. What remains constant, in the circumstances of either the presence or absence of an actual order of support, is the obligation of a parent to provide support and a child's continued need for that support. A child's needs do not end with the death of a parent who has been providing support. Thus, our conclusion comports with an additional important public policy furthered by the child support scheme, namely, the provision for the best interests of children. *Department of Revenue* v. *Mason M.*, 439 Mass. 665, 674-675 (2003). It also is consistent with the Legislature's imperative to abolish discriminatory treatment (at least by statute) toward nonmarital children. See G. L. c. 209C, § 1 (stating nonmarital children "shall be entitled to the same rights and protections of the law as all other children"); *Goodridge* v. *Department of Pub. Health*, 440 Mass. 309, 325 (2003) (noting "Commonwealth's strong public policy to abolish legal distinctions between marital and nonmarital children in providing for the support and care of minors"); *Doe* v. *Roe*, 23 Mass. App. Ct. 590, 592 (1987) (pointing out that discriminatory treatment of nonmarital children in matters of support, intestate succession, and remedies in domestic relations controversies usually will result in an unconstitutional denial of equal protection). See also *Clark* v. *Barba*, 37 Mass. App. Ct. 322, 323 (1994) (concluding that Probate and Family Court judge could modify child support provisions of judgment of divorce after death of obligor). As noted in *L.W.K.* v. *E.R.C.*, *supra* at 443 n.15, unlike marital children, nonmarital children cannot benefit from spousal elective share legislation when an obligor dies.

While many courts have decided the issue presented in *L.W.K.* v. *E.R.C., supra,* see 2 H.H. Clark, Jr., Domestic Relations in the United States § 18.2, at 377-378 (2d ed. 1987), it does not appear that many courts have passed on the narrow issue presented in this case. At least one other State appellate court, however, has held that its State's statutory scheme and legal precedents did not, on an obligor's death, bar the entry of a postmortem order of child support against the obligor's estate. See *Matter of the Estate of Delara,* 131 N.M. 430, 433 (Ct. App. 2001). Although the nature and form of the "obligation" to support a child, and the timing of the imposition of such "obligation," has not been specifically addressed, contemporary legal authority supports, in general terms, the enforcement of an "obligation" to pay child support after the obligor's death. See American Law Institute's (ALI) Principles of the Law of Family Dissolution: Analysis and Recommendations § 3.25 (2002).[13] See also 2 H.H. Clark, Jr., Domestic Relations in the United States, *supra* at § 18.2, at 379 (suggesting that determinative factors include "what equity and fairness demand at the time of the obligor's death, in the light of the circumstances then prevailing"). The Legislature has adopted the same view. See *L.W.K.* v. *E.R.C., supra* at 445. Under the Child Support Enforcement Act, an "[o]bligor" is defined as "an individual, or *the estate of a decedent, who owes or may owe a duty of support,* or who is liable under a child support obligation, or who is alleged, by sworn statement, to be the parent of a child to whom a duty of support is owed" (emphasis added). G. L. c. 119A, § 1A. The italicized language "plainly suggest[s] that the Legislature intended liability for child support obligations to survive the death of a parent." *L.W.K.* v. *E.R.C., supra.* So also is the implication contained in G. L. c. 190, § 7, see note 8, *supra.* To limit enforcement of a child support obligation to only those

---

[13]Section 3.25 of the American Law Institute's (ALI) Principles of the Law of Family Dissolution: Analysis and Recommendations (2002) provides:

> "The child-support rules should provide that the obligation to pay child support does not automatically terminate upon the death of an obligor. If a child-support obligor dies, the court may, as justice requires, modify or terminate the support obligation, or commute the support obligation to a lump-sum payment."

taking the form of a preexisting legal order would have the potential of adversely affecting the financial stability of children and would discourage parents from attempting to resolve support issues amicably and without resort to court intervention, the latter of which can fast consume one's resources.

2. We conclude that the judge's question, as reported, must be answered as follows: Where paternity is not disputed, the unequivocal policy mandates of the Legislature concerning the support and protection of nonmarital children, permit a Probate and Family Court judge to enter (and subsequently enforce) an initial award of child support for a nonmarital child after the death of the obligor. In fashioning such an order, the judge must take into account, by means of a credit to J.M.M.'s estate, the Social Security survivor benefits, life insurance proceeds, and any other payments or benefits Jaclyn has, or will, receive.[14] See *L.W.K.* v. *E.R.C.*, *supra* at 452.

*So ordered.*

---

[14] See *Taverna* v. *Pizzi*, 430 Mass. 882, 884-885 (2000) (within judge's discretion under G. L. c. 208, §§ 28, 36, to require obligor to secure child's future support needs in event of his death by executing life insurance policy for child). See also ALI Principles of the Law of Family Dissolution: Analysis and Recommendations, *supra* at § 3.25, Reporter's Notes to comment b, at 569 (noting that continuance of child support obligation may be effected by "the common practice of requiring the support obligor to maintain life insurance naming the child as beneficiary").